**NORTHEAST BANK OF LEWISTON
AND AUBURN,**

v.

**Daniel J. MURPHY and Fireman's
Fund Insurance Co.**

Supreme Judicial Court of Maine.

Argued May 1, 1986.

Decided July 11, 1986.

Berman, Simmons & Goldberg, P.A., Paul Macri (orally), Jeffrey Rosenblatt, Lewiston, for plaintiff.

Richardson, Tyler & Troubh, Eve Cimmet (orally), Portland, for Fireman's Fund Ins. Co.

Thomas J. Conolly (orally), Portland, for Daniel Murphy.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE * and WATHEN, JJ.

McKUSICK, Chief Justice.

Defendants Daniel J. Murphy and Fireman's Fund Insurance Co. (Fireman's) both appeal the money judgments for conversion entered against them by the Superior Court (Androscoggin County) in favor of plaintiff Northeast Bank of Lewiston and Auburn (the Bank). Murphy also appeals the judgment of indemnification entered against him on the cross-claim of his co-defendant Fireman's. We find no reversible error committed by the Superior Court and accordingly affirm its judgments in all respects.

On March 24, 1978, the Bank was a judgment creditor of Louise Crochere. Following disclosure proceedings, the District Court (Lewiston) on that day issued an order imposing a lien for $4,771.44 in favor of the Bank upon any proceeds that Crochere might recover in a lawsuit that she was then prosecuting against one Wentworth in Superior Court (Kennebec County) for her injuries suffered in an auto accident. In the *Crochere v. Wentworth* litigation Murphy was Crochere's attorney; Fireman's, as Wentworth's insurer, was providing his defense. Both Murphy and Fireman's attorney received notice of the Bank's lien ordered on any proceeds recovered by Crochere in her suit against Wentworth. The District Court's lien order of March 24, 1978, was never appealed.

On January 9, 1979, Fireman's, through its attorney, settled *Crochere v. Wentworth* for $6,500 and sent the settlement check in that amount to Murphy as Crochere's attorney. In the course of doing so, the Fireman's attorney through oversight took no action to protect the Bank on its lien, but that attorney did, promptly upon discovering his mistake on January 24, 1979, obtain from Murphy an agreement that the Bank's lien would be taken care of by Crochere. Without notice to the Bank, however, Murphy in the period of January to March 1979 distributed the total settlement proceeds to himself in payment of legal fees, to certain physicians and a hospital, and to Crochere herself. On March 28, 1979, Crochere through her attorney Murphy filed a petition in bankruptcy.

Previously, on January 19, 1979, Crochere had filed in the District Court a motion to vacate the Bank's lien, which motion was denied eleven days later. On March 9, 1979, however, the Superior Court (Androscoggin County) held that a damages claim for personal injuries was not lienable, and directed the District Court on remand to rescind the lien order. On an appeal taken on April 3, 1979, by the Bank, *Northeast Bank N.A. v. Crochere*, 438 A.2d 266, 268 (Me.1981), reversed the Superior Court and reinstated the lien, holding that the District Court's lien order was not void, and that therefore that order "became final upon expiration of the appeal period and was not subject to collateral attack by a motion to vacate."

Thereafter, the Bank brought this present conversion action against Murphy and Fireman's jointly. After a nonjury trial the Superior Court found that both defendants were liable for conversion of the Bank's lien rights in the *Crochere v. Wentworth* settlement proceeds and that defendant Murphy was liable in double damages under 14 M.R.S.A. § 3155 (1980). The court also found Murphy liable on Fireman's cross-claim to indemnify Fireman's for its damages, costs, and attorney's fees arising out of the Bank's judgment of conversion against it.

## I. *Fireman's Appeal*

The Bank brought its claim of conversion against Fireman's alleging (1) that Fireman's had notice of the Bank's lien on any settlement proceeds made payable to Crochere on her claim against Wentworth, and (2) that Fireman's, representing Wentworth, had nonetheless sent the settlement check for $6,500 to Attorney Murphy, who

* VIOLETTE, J., sat at oral argument and in initial conference, but participated no further.

represented Crochere, without setting aside the $4,771.44 due the Bank. The Superior Court found that Fireman's conduct constituted conversion. " 'The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion.' " *Ocean National Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me.1983) (quoting *G.M.A.C. v. Anacone*, 160 Me. 53, 82, 197 A.2d 506, 524 (1964)). Fireman's whole case before the Superior Court, as well as here on appeal, is based upon its contention that plaintiff Bank failed to prove four necessary elements of conversion. Specifically, Fireman's argues (1) that it merely forgot about the Bank's lien and had no intent to commit a conversion of the Bank's property interest; (2) that Fireman's did not interfere with the Bank's lien rights to the *Crochere v. Wentworth* settlement proceeds; (3) that the Bank never made an adequate demand followed by an unequivocal refusal by Fireman's; and (4) that conversion does not lie because the Bank did not have an immediate right of possession to the settlement proceeds. On the basis of the rules of law applicable to the facts found by the Superior Court, that court quite properly rejected all four of Fireman's arguments and so do we.

■ **Intention to convert.** The only intention needed to prove conversion in this case is an intention by Fireman's to exercise dominion or control over the settlement proceeds that in fact seriously interfered with the lien rights of the Bank. *See Ocean National Bank*, 462 A.2d at 39–40; *Restatement (Second) of Torts* § 224 comment c (1965). Fireman's asserts, however, that it did not have any intent to exercise that dominion or control as is evidenced by the fact that it was releasing the settlement proceeds to Murphy, not keeping them for itself. The act of releasing the check to Murphy nonetheless represented the exercise of dominion and control by Fireman's. A defendant may be liable for conversion even where he thinks the property is his or he is unaware of the existence of another's rights in the property. *Restatement* § 224 comment c. The Superior Court did not err in finding that Fireman's had the necessary intention to exercise dominion and control over the settlement proceeds.

■ **Interference with the Bank's lien rights.** Fireman's relies on *Fitzgerald v. Cleland*, 498 F.Supp. 341, 352–53 (D.Me. 1980), for the proposition that "the limited possession of another's property for a lawful and proper purpose without any intention to deprive the owner of possession does not constitute conversion." *Fitzgerald*, however, is distinguishable from the case at bar. In *Fitzgerald* the court found no conversion where the Veterans Administration had removed the personal property of the plaintiffs from their home after they had defaulted on their mortgage. The VA had made repeated requests for the plaintiffs to remove their belongings before it had eventually moved them into nearby storage. The VA paid the costs of moving and one month's storage fee. Illustration 5 of comment d, § 222A of the *Restatement (Second) of Torts* recites a fact pattern identical to that in *Fitzgerald*, and also concludes that no conversion occurs. The fact pattern in the case at bar, however, is better compared to illustrations 9 and 10 of the same section and comment of the *Restatement:*

9. *A* ships goods over *B* carrier, consigned to himself. By mistake *B* delivers the goods to *C*. *B* discovers the mistake immediately, and within twenty-four hours recovers the goods from *C*, and delivers them to *A*. This is not a conversion.

10. The same facts as in Illustration 9, except that the goods are not recovered, and remain in the possession of *C*. This is a conversion.

If Fireman's had recovered the lien money before Murphy disbursed it, then this case would be similar to illustration 9. Instead it never recovered the money, and therefore the facts here parallel illustration 10. The Superior Court was correct to conclude

that Fireman's act of releasing the settlement proceeds to Murphy constituted a wrongful interference with the Bank's property interest.

■ **Demand and refusal.** Fireman's takes nothing by its argument that the Bank made no demand after the settlement proceeds had come into existence. As a factual matter, the Bank already had made a demand by notifying Fireman's of the existence of the lien. To require it to make a second demand would have required the impossible: to foresee when the case would be settled and a check issued. When Fireman's drew the settlement check it had an outstanding demand from the Bank, and its mailing constituted an unequivocal refusal to respect the Bank's lien rights therein.

■ **The Bank's immediate right to possession.** The Bank's lien was impressed upon the settlement proceeds in whosever hands they were at any time, whether Fireman's, Murphy, or Crochere. When the funds were set aside by Fireman's and the check drawn, the lien immediately attached. Similarly, that lien existed when the check representing those proceeds reached Murphy and when any part of those proceeds reached Crochere. It is those settlement proceeds, or rather the Bank's interest therein, that was converted by Fireman's by paying over those proceeds to a third party, Murphy, without any regard to the Bank's lien. In any event, even if the Bank were viewed as having only a right to *future* possession of a part of the settlement proceeds, the interference by Fireman's with that future right is itself an actionable tort, whether or not denominated "conversion." *See Restatement (Second) of Torts* § 222A comment b; § 243 comment b.

In conclusion, the Superior Court committed no error in finding Fireman's liable for conversion, and we reject Fireman's appeal.

## II. *Murphy's Appeal*

### A. *Conversion by Murphy*

■ The Superior Court was well justified in finding defendant Murphy liable for conversion. The record shows that Murphy (1) received certified notice of the Bank's lien on the proceeds of Crochere's settlement with Wentworth; (2) never informed the Bank that he had received a $6,500 settlement check from Fireman's; (3) disbursed the settlement funds during the 30 days after the Superior Court, in *Northeast Bank N.A. v. Crochere,* ruled that the lien was void *ab initio,* even though as a lawyer he was charged with knowing that M.R.Civ.P. 62 kept the lien order in force until the appeal period expired; (4) gave Crochere her money during the appeal period and told her that it was hers to spend and did so in knowing violation of the Bank's lien; and (5) after Crochere had spent all the settlement proceeds, filed for her bankruptcy. The record amply supports the Superior Court's conclusion that Murphy committed an intentional exercise of dominion and control over the *Crochere v. Wentworth* settlement proceeds and in fact seriously interfered with the Bank's lien rights therein. *See Ocean National Bank,* 462 A.2d at 39–40.

■ Murphy argues that the Superior Court erred in finding him liable for conversion because the lien order was invalid and unenforcible and thus no conversion of any valid property interest of the Bank occurred. However, the validity of the lien on the settlement proceeds in *Crochere v. Wentworth* is not open to dispute. We held in *Northeast Bank N.A. v. Crochere,* 438 A.2d 266, 268 (Me.1981), that the lien order of March 24, 1978, became final and beyond attack by any collateral means when Crochere took no appeal therefrom. After the appeal period provided by M.D.C. Civ.R. 73(a) had expired, the Bank had a property interest that Murphy could not lawfully interfere with.

Murphy bases the remainder of his argument on three defenses: (1) that the lien was discharged in the bankruptcy of Crochere and that the Bank therefore has no convertible interest; (2) that the Superior Court's order in the *Northeast Bank N.A.*

*v. Crochere* case finding the lien void *ab initio* protected Murphy from liability between the time the order was entered and the date the Bank filed its notice of appeal to the Law Court; and (3) that he disbursed the settlement proceeds to himself and other professional creditors of Crochere, which payees had liens superior to the Bank's, thus making him privileged to disburse those amounts.

■ The bankruptcy discharge defense is without merit. Murphy's tortious interference with the Bank's lien rights, by disbursing the entire settlement proceeds, took place well *before* Crochere filed her petition in bankruptcy on March 28, 1979. Other arguments of Murphy about what might have happened in the bankruptcy proceeding will not be considered because they were not raised in the trial court. *See Blanchette v. York Mutual Insurance Co.,* 455 A.2d 426, 428 (Me.1983).

■ Murphy next argues that he committed no conversion because he disbursed the funds after March 9, 1979, when the Superior Court directed the District Court to rescind the Bank's lien in *Northeast Bank N.A. v. Crochere* but before April 3, 1979, when the Bank filed its notice of appeal to the Law Court. In doing so, however, Murphy was clearly in violation of both the letter and the spirit of M.R. Civ.P. 62. Rule 62(a) states in pertinent part, "[N]o execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry or until the time for appeal ... has expired." The principle "implemented in Rule 62 is that an unsuccessful defendant should have the full appeal period to decide whether to exercise his right to appellate review unharrassed by enforcement of the judgment." 2 Field, McKusick & Wroth, *Maine Civil Practice* § 62.1, at 86 (2d ed. 1970). *Cf.* M.R.Civ.P. 62(f) (an attachment remains in force during the time for appeal); 2 Field, McKusick & Wroth, § 62.5, at 90 ("[i]f judgment is for the defendant, the attachment is 'dissolved forthwith' when a judgment becomes final by virtue of expiration of the time for appeal or by dismissal or decision of an appeal"). The Superior Court acted in *Northeast Bank N.A. v. Crochere* as merely an intermediate appellate court, and Murphy acted entirely at his own peril in relying upon its intermediate decision at a time when it was still subject to appeal to the Law Court. At that time, as at all times after the settlement proceeds came into existence on or before January 9, 1978, the Bank had a lien interest in those proceeds with which Murphy had no legal right to interfere.

■ Finally, we reject Murphy's attempt to justify his action in cutting off the Bank's lien rights on the ground that the physicians, hospital, and attorneys to whom he disbursed the settlement proceeds had liens enjoying a priority ahead of the Bank's. At common law physicians have no lien on damages recovered on a personal injury claim, *Marsh v. LaMarco,* 75 Misc.2d 139, 351 N.Y.S.2d 253, 258–59 (1973); and no Maine statute gives physicians any such lien. Maine hospitals, however, do have a statutory lien, *see* 10 M.R.S.A. § 3411 (Supp.1985); and attorneys, we will assume without deciding, have a common law lien on settlement proceeds. *But see Averill v. Longfellow,* 66 Me. 237, 238 (1876) ("Before [judgment], the parties may settle and disregard the claims of the attorney"). Nonetheless, Murphy's priorities argument is in the nature of an affirmative defense on which he bears the burden of proof. *See Dougherty v. Oliviero,* 427 A.2d 487, 489 (Me.1981). *See also* 1 Field, McKusick & Wroth, §§ 8.7, 8.20. He failed to establish that the attorney's fees he disbursed related only to legal services on *Crochere v. Wentworth* or that the hospital payee ever did anything to assert or perfect its potential statutory lien. Overall, Murphy's priorities argument is unconvincing as an after-the-fact justification for his complete destruction of the Bank's lien interest, because he did nothing to have the District Court that created the Bank's lien, or any other tribunal, determine the existence or

relative priorities of any liens against those settlement proceeds. It is now too late to claim that his actions were taken in an attempt to conform to some hypothetical and at best uncertain legal priorities.

In conclusion, we find no merit in Murphy's attack upon the Superior Court's conclusion that he is liable to the Bank for conversion of its lien interest in the *Crochere v. Wentworth* settlement proceeds.

### B. *Murphy's Liability for Double Damages under 14 M.R.S.A. § 3155*

■ The Superior Court also found defendant Murphy liable to the Bank for double damages for violating 14 M.R.S.A. § 3155 (1980), which reads:

> Whoever knowingly aids or assists a debtor ... in a fraudulent transfer or concealment of his property, to secure it from creditors and to prevent its attachment or seizure on execution, is liable to any creditor suing therefor in a civil action, in double the amount of property so fraudulently transferred or concealed, not exceeding double the amount of such creditor's demand.

After "carefully review[ing] the evidence with regard to Murphy's handling of the money received from Fireman's," the Superior Court was led to the "inescapable conclusion" that the series of events showed that Crochere wanted to keep her settlement money away from the Bank and that defendant Murphy knowingly aided her in concealing it. The court was fully justified in drawing that inference from the evidence before it.

Crochere's own testimony at trial showed that she knew of the bank lien, but that she spent the money she received nonetheless. She also told Murphy not to pay out any of the settlement to the Bank. Murphy knew of the existence of the lien, yet he told Crochere that the money was hers to spend. The evidence showed that the sequence of Murphy's actions on Crochere's behalf was: (1) receipt of the settlement proceeds; (2) disbursement of those entire proceeds without notice to the Bank; and

then (3) filing of a petition in bankruptcy in an attempt to discharge the Bank's lien. The Superior Court did not err in drawing the conclusion that Murphy knowingly aided and abetted Crochere in fraudulently transferring or concealing the settlement proceeds.

### C. *Indemnification of Fireman's*

■ Finally, Murphy argues that he should not be held liable to indemnify Fireman's for the damages against it caused by its being found liable for conversion. The Superior Court held in favor of Fireman's on its cross-claim, awarding it indemnification together with attorney's fees and costs, because it acted without an "immediate present knowledge of the existence of the lien at the time the draft was sent to Murphy," and as soon as Fireman's "realized its error, it contacted Murphy and in essence did all that it could to assure that the lien would be dealt with."

Based on the evidence at trial the Superior Court was justified in concluding that Fireman's was less culpable than Murphy and that Fireman's should be entitled to indemnification. Fireman's offered in evidence correspondence between Murphy and Fireman's attorney, along with an affidavit by that attorney, tending to show that Fireman's was merely negligent. A January 9, 1979, letter from Fireman's attorney to Murphy transmitted the $6,500 check and a release form. The release stated:

> It is the understanding of the releasees that there are no liens legally chargeable against the payment described herein, and it is further expressly understood and agreed that the releasor [i.e., Crochere] expressly assumes complete and exclusive responsibility for the discharge of any claimed liens against the payment described therein.

Murphy and Crochere signed and dated the release on January 12, 1979. When Fireman's was reminded of the Bank's lien, its attorney wrote to Murphy on January 24, 1979, and stated that the release was technically incorrect since there was in actuali-

ty an outstanding lien, but that Fireman's had made the offer of settlement "with the understanding that Mrs. Crochere will see to the discharge of any liens." After a telephone conversation that same day, Fireman's attorney wrote Murphy, stating, "You have indicated to me that you are holding sufficient money out of the settlement to satisfy the lien of Northeast Bank.... Based on this understanding, I am not going to take any action to rescind the settlement agreement."

The Superior Court concluded, "[H]ad Murphy done what he should have done [with the settlement proceeds], the actions of Fireman's Fund in disbursing the funds to him would have caused no harm to plaintiff Bank, and in fact this lawsuit would not have arisen and Fireman's Fund would therefore not have had to expend anything in attorneys' fees or costs connected with this lawsuit."

The case at bar is an appropriate one for indemnity in order "to do justice within the law so that one guilty of an active or affirmative act of negligence [or intentional act] will not escape liability, while another whose fault was only technical or passive assumes complete liability." 41 Am.Jur.2d *Indemnity* § 20, at 706 (1968). The present facts bring this case squarely within the black letter rule of section 97 of the *Restatement of Restitution* (1937), which declares:

> A person whose negligent conduct combined with the reckless or intentionally wrongful conduct of another has resulted in injury for which both have become liable in tort to a third person is entitled to indemnity from the other for expenditures properly made in the discharge of such liability, if the other knew of the peril and could have averted the harm at a time when the negligent tortfeasor could not have done so.

Furthermore, Murphy disbursed the settlement proceeds in disregard of what the Superior Court found to be a contract between Murphy as Crochere's attorney and Fireman's, which entitled Fireman's to rely

upon Murphy to see to it that the Bank's lien was taken care of. *See, e.g., Gardner v. Murphy*, 54 Cal.App.3d 164, 168, 126 Cal.Rptr. 302, 304 (1975) (indemnity is "a total and complete transfer of liability that is equitably justified by the difference in character or kind of the wrongs of the two tortfeasors"). We find no error in the Superior Court's award of indemnity, attorney's fees, and costs to Fireman's.

The entry is:

Judgments affirmed.

All concurring.