STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-280

STATE OF MAINE and
MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

    Plaintiffs

v.

**ORDER ON MOTIONS**

CARL W. SMITH and
FRANK H. BISHOP, SR. and
ACADIA INSURANCE COMPANY,

    Defendants

This matter is before the court upon motion for summary judgment by defendant Acadia Insurance Company, motion for summary judgment by Frank H. Bishop, Sr., and a motion for summary judgment by plaintiffs State of Maine and Maine Department of Environmental Protection.

This case concerns a dispute over the alleged rights of the State of Maine and Maine Department of Environmental Protection (collectively the "DEP" or "plaintiffs") in the proceeds of a judgment rendered against defendant Acadia Insurance Company (hereinafter "Acadia") and in favor of defendant Carl W. Smith (hereinafter "Smith") in prior litigation (hereinafter referred to as the "Insurance Lawsuit"). Additionally, the parties dispute whether certain communications regarding the Insurance Lawsuit amount to a promise, thus entitling the DEP to equitable relief.

The course of events culminating in this action began on July 13, 2000. That day, Smith, a potato farmer, was transporting chemicals in a farm vehicle used for spraying. The cardboard boxes containing the chemicals came into contact with the vehicle's hot exhaust pipes, thereby causing a fire. The ignition of these boxes caused a dispersal of

the chemicals, necessitating a cleanup operation by the DEP.[1] The cost of this cleanup was approximately $63,000.00. Smith subsequently filed claims against policies of insurance he held with Farm Family Casualty Insurance Company (hereinafter "Farm Family") and with Acadia.[2]

Acadia denied Smith's claim, prompting Smith to file the Insurance Lawsuit. Defendant Attorney Frank H. Bishop, Sr. (hereinafter "Bishop") represented Smith in that action. On April 5, 2003, the Aroostook County Superior Court issued an Order[3] granting the motions for summary judgment of Smith and Farm Family and denying the motion for summary judgment of Acadia. Pursuant to this Order, Acadia issued checks in satisfaction of the judgment to Bishop as counsel for Smith, however, no funds have since been distributed to the DEP to reimburse the cleanup costs it incurred.

On November 7, 2003, the DEP filed a complaint in three counts, naming Smith, Acadia, and Bishop as defendants. Count I (reimbursement of DEP's costs) was raised solely against Smith. Counts II (conversion of judgment proceeds) and III (promissory estoppel) were raised against all defendants. Acadia filed its answer, affirmative defenses, and cross-claim against Smith on November 19, 2003. Smith filed his answer and cross-claim answer on December 5, 2003. Bishop filed his answer on December 11, 2003. Bishop also filed a cross-claim on December 24, 2003 naming Smith as defendant-in-cross-claim.[4] Additionally, Bishop filed a motion for change of venue to Aroostook County, to which the DEP timely filed its opposition.[5]

---

[1] Smith denies the allegations repeated in this sentence in his answer. It appears that beyond filing his answers to the complaint and Acadia's crossclaim in December of 2003, Smith has not filed any other papers in this action.

[2] On the claim, Farm Family paid $24,310 to the DEP.

[3] *Smith v. Acadia Ins. Co.*, AROSC-CV-01-047 (Me. Super. Ct., Aro. Cty., Apr. 5, 2003) (Mills, C.J.).

[4] It appears that Smith did not file an answer to Bishop's Cross-Claim.

[5] Pending subject to the outcome of the within summary judgment motions.

Acadia filed its motion for summary judgment pursuant to M.R. Civ. P. 56 on all counts asserted against it, with accompanying memorandum of law and statement of material facts. Bishop filed his motion for summary judgment pursuant to M.R. Civ. P. 56 on all counts asserted against him, with accompanying memorandum of law and statement of material facts. The DEP filed its motion for summary judgment pursuant to M.R. Civ. P. 56 against all defendants on all counts asserted against them,[6] with accompanying memorandum of law and statement of material facts. Additionally, plaintiffs timely filed their opposition to Acadia's motion for summary judgment on this date[7], along with an opposing statement of material facts.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an

---

[6] Except for count III against Acadia. See next footnote.

[7] In this opposition, the DEP states that it did not intend to seek recovery against Acadia on the promissory estoppel claim presented in its complaint and, therefore, that no opposition is asserted to such portions of Acadia's summary judgment motion.

issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

## Count I – Claims Against Carl W. Smith

In count I of the complaint, the plaintiffs seek reimbursement from Smith for the DEP's cleanup costs incurred as a result of the fire and chemical spill described above. In support of their motion, plaintiffs cite to several sections of the Maine Revised Statutes Annotated as well as the Code of Maine Rules. In particular, plaintiffs note that they are permitted to seek reimbursement for monies taken from the Maine Hazardous Waste fund to remove or abate unlicensed discharges of hazardous waste.[8] In addition, plaintiffs state that Endosulfan, one of the chemicals Smith admitted to transporting when the fire occurred, is considered a "hazardous waste" within the meaning of the statute[9]. Furthermore, they state that Smith, as a person who caused a discharge of hazardous waste, is strictly liable to reimburse all of the DEP's related cleanup costs.[10]

The DEP draws support for its statement of material facts from documents filed in both the present action, as well as the Insurance Lawsuit. In particular, plaintiffs note that on the date in question, Smith admits to having transported Endosulfan and other chemicals in his farm vehicle. Further, plaintiffs cite to Bishop's responses to their first request for admissions wherein Bishop admits that the facts as laid out in the Insurance

---

[8] *See* 38 M.R.S.A. § 1306(3) (2001).

[9] *See* 06-096 CMR c 850, § 3(C)(4)(e) (2004); [Hazardous Waste # P050].

[10] *See* 38 M.R.S.A. § 1319-J (2001).

Lawsuit complaint, as well as a statement of material facts that he filed on Smith's behalf in that suit, are true and accurate.[11] Among the allegations contained in the Insurance Lawsuit statement is an assertion that on the date in question, Smith was transporting chemicals in a vehicle and that a fire broke out, causing the accidental discharge of said chemicals upon private property, necessitating a cleanup by the DEP.[12]

Based on the record before the court, it appears that there is no genuine issue as to any material fact regarding Smith's potential liability to the DEP on count I of the complaint. Since Smith has failed to respond to the plaintiffs' motion, the foregoing facts as laid out by the DEP are uncontroverted. Further, the statutory provisions cited by the DEP are fairly straightforward and clear. The following are of particular relevance here:

> Any person who permits, causes or is responsible for a discharge or threatened discharge of hazardous waste shall reimburse the State for all costs incurred...in the removal of the discharge.... In any suit to enforce claims of the State under this section, it is not necessary for the State to plead or prove negligence in any form or manner on the part of the person causing, permitting or responsible for the discharge.... The State need only plead and prove the fact of the discharge or threatened discharge and that the discharge occurred while the hazardous waste was in the custody or control of the person causing, permitting or responsible for the discharge....

38 M.R.S.A. § 1319-J (2001). Applying the foregoing statutory language, as well as the other sections cited *supra*, to the undisputed facts presented, it seems that judgment as a matter of law may be properly granted on count I of the complaint.

---

[11] Plaintiffs' statement of material facts in support of their summary judgment motion also references "Carl Smith's Admissions", parenthetically explaining that Smith's admissions "authenticate and incorporate a Statement of Material Facts filed on behalf of Carl Smith by Frank Bishop in the Insurance Lawsuit". Apparently, this is the same statement of material facts purportedly authenticated by Bishop in his responses to plaintiffs' request for admissions. The set of Carl Smith's admissions referenced in plaintiffs' statement of material facts does not appear, and deemed admitted, but apparently a request for admissions was sent to Smith's attorney on or about March 5, 2004.

[12] It appears that the DEP failed to submit a copy of either Bishop's admissions or the Insurance Lawsuit Statement with their summary judgment motion, although those documents do appear elsewhere in the file.

Count II – Claims Against Frank H. Bishop, Sr.

In count II of the complaint, the DEP seeks judgment against all three defendants based on a theory of conversion. In their brief, the plaintiffs rely solely on the Law Court's decision in *Northeast Bank of Lewiston and Auburn v. Daniel J. Murphy and Fireman's Fund Insurance Co.*, 512 A.2d 344 (Me. 1986). In that case, Daniel J. Murphy, an attorney, represented Louise Crochere in litigation arising out of an auto accident. Fireman's was the other driver's insurer, and provided his defense. At the time of the accident, the Bank held an unsatisfied judgment against Crochere. The Bank took the appropriate steps to secure a lien upon any proceeds received by Crochere from Firemen's as a result of the litigation. Both Murphy and the attorney for Fireman's received notice of the lien. Thereafter, the suit settled for $6,500.00, and Fireman's sent a check to Murphy in that amount. Murphy, in turn, distributed those funds to his client and other third parties, retaining a portion for legal fees. Neither Murphy nor Fireman's attorney took steps to protect the Bank's interest in the settlement proceeds. When the Bank was unable to collect from Crochere, it filed suit against Murphy and Fireman's alleging, *inter alia*, that they had converted the Bank's interest in the settlement proceeds. Affirming the Superior Court, the Law Court held that the Bank's interest was converted by Fireman's paying over the proceeds to Murphy, and similarly, by Murphy paying over the proceeds to himself and others. As explained by the Law Court, the mere intentional releasing of the check constituted an exercise of dominion and control sufficient for liability for conversion. *See Id*. at 347. Additionally, the Law Court noted that "even if the Bank were viewed as having only a right to future

possession[13] of a part of the settlement proceeds, the interference by Fireman's with that right is an actionable tort, whether or not denominated 'conversion.'" *Id.* at 348.

Plaintiffs argue that Acadia's and Bishop's disbursement of the judgment proceeds, and Smith's transferring them to third parties, is virtually identical to the conduct engaged in by Murphy, Fireman's, and Crochere. They assert that all three defendants acknowledged the legal and factual validity of the DEP's claim for reimbursement in their statements of material facts filed in the insurance lawsuit. Therefore, plaintiffs argue, they are entitled to summary judgment on count II of their complaint.

There is, however, one glaring factual distinction between *Murphy* and the present case. In particular, plaintiffs recognize that they did not have a judgment or other valid lien in place, unlike the Bank in *Murphy*. Instead, plaintiffs attempt to color their interest in the proceeds as a "future right," as mentioned in the Law Court's opinion. Essentially, the plaintiffs' argument is that they have a future right in the judgment proceeds of the Insurance Lawsuit because the defendants had acknowledged the validity of the DEP's claim during the course of that case. Plaintiffs' statement of material facts makes reference to the insurance lawsuit complaint, authenticated by Frank Bishop's admissions, which notes that Smith is pursuing Acadia for funds to reimburse the DEP's cleanup costs.

In opposition to plaintiffs' motion for summary judgment on count II, Bishop raises counterarguments to the DEP's assertion that it has a future right in the judgment proceeds. First, Bishop notes that 38 M.R.S.A. § 1319-G(1) gives the DEP the right only to "seek recovery" of cleanup costs, not necessarily to recover them. Further, Bishop

---

[13] The phrase "future possession" appears in the *Restatement (Second) of Torts* § 243, which the Law Court apparently adopts here.

states that this right to seek recovery is more accurately described as an "inchoate right" rather than a future right, because the DEP never sought an attachment, lien, assignment or other means of securing its interest. This, Bishop concludes, is the critical factor separating the DEP from the Plaintiff in *Murphy*, and dictates a finding that the DEP had no interest that could be converted. Finally, Bishop states that he was ethically obligated to pay the insurance proceeds to his client.

In his cross-motion for summary judgment on count II of plaintiffs' complaint, Bishop essentially restates the legal arguments raised in his opposition to plaintiffs' motion, and reiterates the factual differences between this case and *Murphy*. In addition, Bishop expounds upon his argument that the ethical rules required him to turn the proceeds over to Smith. Specifically, Bishop cites to Maine Bar Rule 3.6(e)(2)(iv),[14] which states that "a lawyer shall...promptly pay or deliver to the client, as requested by the client, the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Also, Bishop argues that there is an opinion of the Professional Ethics Commission on point that discusses proper attorney conduct in this situation. That opinion is based on a hypothetical in which an ex-wife is owed money by her ex-husband pursuant to a separation agreement, and the ex-husband has a potential recovery from a lawsuit. The attorney for the ex-husband is aware of the ex-husband's obligations, but pays the recovered monies to him anyway. The Commission stated that, under Maine Bar Rule 3.6(f)(2)(iv), the attorney was obligated to turn the funds over to the client even if the attorney knew he did not intend to pay his ex-wife. Me. Prof. Ethics Comm'n, Op. No. 116, *Maine Manual on Professional Responsibility* (June 6, 1991). Bishop also mentions a later Commission opinion that discusses Opinion No. 116

---

[14] It is assumed Bishop meant to cite Maine Bar Rule 3.6(f)(2)(iv),

in light of *Murphy*, which states that the attorney's job is to determine whether their client has been "legally divested of his or her right to receive the funds in question." If the answer to this inquiry is no, then the attorney is required to pay the funds over to his client. Me. Prof. Ethics Comm'n, Op. No. 127, *Maine Manual on Professional Responsibility* (December 8, 1992). Bishop argues that his case is more compelling that that described in the hypothetical because here the DEP's claim had not matured, vested, or otherwise been perfected, whereas the ex-wife relied on a valid separation agreement.

Bishop adopts Acadia's statement of material facts in support of its summary judgment motion, which notes that the DEP admits in its complaint that it did not perfect a lien against the proceeds of the insurance lawsuit. The DEP counters this contention in their reply statement of material facts by stating that they could not have secured a lien against the judgment proceeds because the relevant statute does not permit attachments of personal property. *See* 38 M.R.S.A. § 1371 (2001).

In opposition, the DEP again lays out the arguments asserted in their summary judgment motion, and also addresses Bishop's arguments based on the ethical rules. First, the DEP notes that the ethical rules did not shield Attorney Murphy from liability for conversion. This statement, however, fails to address whether Smith had been legally divested of his right to receive the funds in question, as had Crochere in *Murphy*. Presumably, though, the DEP believes that this issue is adequately dispensed by their conclusion that they have a future right in the judgment proceeds. Finally, the DEP notes that Bishop could have protected himself against both ethical violations as well as the conversion claim by simply issuing a dual payee check for the judgment proceeds to

Smith and the DEP.[15] Again, this statement presupposes that the plaintiffs' do in fact enjoy a future right in the judgment proceeds.

The underlying question permeating the aforementioned submissions appears to be this: Does the DEP's interest in the proceeds of the Insurance Lawsuit amount to a "right to future possession" as contemplated by the Law Court in *Murphy*? *Murphy*, 512 A.2d at 348. The answer to this question is no. First, it seems that the DEP's reading of *Murphy* is inaccurate. Given the context of their discussion, it seems that if the Law Court meant to include unsecured creditors among those having a future right of possession in a debtor's property, they would have, and easily could have, explained this. Rather, the Law Court, in adopting section 243 of the Restatement (Second) of Torts, was simply trying to alleviate any doubt that parties possessing a valid security interest in Maine have a cause of action in conversion, regardless of whether *that* possessory interest is dubbed present or future. Moreover, the DEP has failed to cite any authority for its contention that the facts of this case amount to such a future right.

Additionally, to the extent that the plaintiffs raise 38 M.R.S.A. § 1371 in support of their claimed future interest, this argument is misleading and unpersuasive. The DEP notes that section 1371 only addresses the placement of liens on real estate, not personal property. While plaintiffs correctly assert that they are not permitted to attach personal property pursuant to this particular section, the DEP goes on to conclude that, therefore, they may make no attachments of personal property at all. Although it is not made explicitly clear, it appears that the plaintiffs are asking this Court to elevate their unsecured claim to the status of a "right to future possession" contemplated in *Murphy* because they are at an inherent disadvantage with regard to obtaining security.

---

[15] Bishop's reply to the DEP's opposition notes that this assertion is based on facts not included in the DEP's opposition statement of material facts, and therefore, this argument should be disregarded. It appears that Bishop is correct.

Plaintiffs draw the court's attention particularly to 38 M.R.S.A. § 1371(1), which reads as follows:

> All costs incurred by the State for the abatement, clean up, or mitigation of hazards posed by an uncontrolled hazardous substance site and all interests and penalties shall be a lien against the real estate of the responsible party.

38 M.R.S.A. § 1371(1) (2001).

A plain reading of this language does not support the plaintiffs' position. All that this section purports to do is to automatically encumber the real property of a person responsible for a discharge of hazardous waste. It does not include any instruction that cleanup costs "shall *not* be a lien against the personal property of the responsible party", or some other similar provision. In fact, neither this section nor any other within chapter 13-B contains such a prohibition. Hence, it seems that the only disadvantage suffered by the DEP in this case was self-created in that they failed to take affirmative steps to perfect their interest.

In sum, the DEP has failed to show that they are in a position analogous to the Bank in *Murphy* or that their interest in the judgment proceeds of the Insurance Lawsuit is otherwise a "right to future possession". Thus, the DEP held no interest that could be converted. Because the parties do not dispute that the plaintiffs did not have a valid lien on the judgment proceeds, as a matter of law DEP's motion on count II musts be denied.

## Count II – Claims Against Acadia Insurance Company

The arguments raised by the DEP and Acadia are essentially identical to those made by the DEP and Bishop.[16] Again, resolution of these cross motions comes down

---

[16] Acadia attempts to further distinguish themselves from the insurer in Murphy in that Acadia had no contact with the creditor prior to releasing any funds. This factual contention, included in Acadia's statement of material facts in support of their summary judgment motion, is not disputed by plaintiffs.

to the Court's interpretation of the Law Court's holding in *Murphy*. In particular, the dispositive question is whether or not the DEP's interest in the judgment proceeds constitutes a "right to future possession." Insofar as the parties do not dispute that the plaintiffs had no valid lien on the proceeds of the Insurance Lawsuit, judgment as a matter of law may be rendered.

## Count II – Claims Against Carl W. Smith

Smith failed to file any opposition to the plaintiffs' motion for summary judgment. The arguments raised by the DEP against Smith on count II of its motion are identical to those asserted against the other defendants. Therefore, plaintiffs' assertion that they did not have a valid lien on the judgment proceeds is deemed admitted. Because the DEP did not have a future right to possess the judgment proceeds under *Murphy*, it is not possible for plaintiffs to prove any set of facts entitling them to recover on a claim of conversion relative to said proceeds. Pursuant to M.R. Civ. P. 56(c), where appropriate, the Court may render summary judgment against the moving party. There are no disputed issues of material fact, and judgment as a matter of law may be rendered.

## Count III – Claims Against Frank H. Bishop, Sr.

In count III of the complaint, the DEP seeks to recover from defendants Bishop and Smith on a theory of promissory estoppel.[17] In support of this claim, plaintiffs refer to a series of communications that transpired between Bishop and a DEP employee named Cassandra Perkins (hereinafter "Perkins"). In particular, plaintiffs cite a

---

[17] The doctrine of promissory estoppel is not a cause of action. An estoppel, as a matter of law, is a bar. It can also be "an affirmative defense alleging good-faith, reliance on a misleading representation and an injury or detrimental change in position resulting from that reliance." BLACK'S LAW DICTIONARY 570 (7th ed. 1999). It is an equitable doctrine used in a legal cause of action for breach of contract where the defendants assert lack of consideration.

February 11, 2003 letter written by Bishop memorializing a telephone conversation he had that day with Perkins. In part, the letter states as follows:

> ...I represent [Farm Family] and [Smith] in a civil action against [Acadia] in an effort to compel [Acadia] to indemnify [Smith] on your clean-up costs, which I understand totals $62,000.00+/-.
>
> If we are successful, we would get a judgment in the amount of $62,000.00+/-, which would reimburse Farm Family and [Smith] as their interests may appear. That amount, less attorney fees, would be available to apply toward the clean-up costs.
>
> In any event, I will advise you of any significant developments and, in the meantime, if you have any further questions or concerns, please let me know.

The DEP contends that the above-quoted language constitutes a promise by Bishop to Perkins that if he was successful in the Insurance Lawsuit, the proceeds would be available to the DEP to pay its cleanup costs. Further, plaintiffs aver that this promise was such that Bishop should have reasonably expected the DEP to forbear from otherwise pursuing Smith. In support of these assertions, the DEP cites to Perkins' deposition and affidavit, wherein she states her belief that the DEP would in fact be paid if Bishop prevailed and that the DEP did in fact forbear based upon Bishop's promise.

Additionally, plaintiffs reference a subsequent letter by Bishop to Perkins, dated April 10, 2003. This letter, which included a copy of the court order denying Acadia's motion for summary judgment and granting Smith and Family Farm's motion, explained that assuming Acadia does not appeal, "we should be able to wrap this up." Plaintiffs assert that this communication also amounts to a promise that was reasonably expected to induce the DEP to forbear from taking action because the DEP could reasonably believe that, as long as Acadia did not appeal, a majority of the proceeds would be forthcoming. In support of this contention, plaintiffs again cite to Perkins'

deposition testimony wherein she states her interpretation of this letter that, once the appeal period ran, the DEP would be paid.

Finally, the DEP concludes by stating that the only way to avoid injustice is to enforce Bishop's promise against him and Smith.

In his opposition, Bishop argues that there are four major flaws in the plaintiffs' argument. First, Bishop points out that the DEP never established, or even alleged, that Bishop made a promise to pay them money. Bishop points out that plaintiffs use passive phrases when describing the alleged promises, such as: "Ms. Perkins and DEP staff expected that if Carl Smith won the Insurance Lawsuit, DEP would receive payment for its clean-up costs." Bishop also cites Perkins' deposition testimony, wherein she stated: "I didn't know if the check would come directly from Acadia, from Mr. Bishop, or from Mr. Smith." Bishop contends that these statements show that he never made any promises to Perkins that he would pay, and at most, the only thing promised was that the money would be available.

Second, Bishop asserts that paragraph two of the letter of February 11, 2003, does not contain any promises of payment, but only that the money would be available. Further, Bishop argues that this statement should not have reasonably induced forbearance, but rather, it should have provided motivation for the DEP to act to protect its claim.

Third, Bishop states that even if plaintiffs could establish that Bishop promised to keep them informed, they have not shown that he breached this promise.

Fourth, Bishop notes that "Equity will not protect a party who has slept on his rights or failed to act with reasonable diligence". *Fitzgerald v. City of Bangor*, 726 A.2d 1253, 1256 (Me. 1999). Bishop argues that the DEP did nothing to protect their rights except to call Bishop, and this inaction should bar their equitable claims.

The arguments raised in Bishop's own motion for summary judgment and the DEP's opposition thereto are largely the same as those discussed.

The doctrine of promissory estoppel, as adopted by the Law Court, is as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of a promisee or a third person and which does induce such action or forbearance is binding if justice can be avoided only by enforcement of the promise.

*Struck v. Hackett*, 668 A.2d 411, 420 (Me. 1995) (quoting Restatement (Second) of Contracts § 90); *See also Tarbuck v. Jaeckel*, 752 A.2d 176, 180 (Me. 2000). Further, BLACK'S LAW DICTIONARY defines a promise as:

> The manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something.

BLACK'S LAW DICTIONARY 1228-9 (7th ed. 1999).

In the present case, the parties apparently agree that the communications giving rise to the alleged promises are the two letters from Bishop to Perkins, transcribed in relevant part above. Although there is no dispute as to the contents of these letters, the parties vehemently disagree as to the legal effect of the language employed.

After considering the arguments raised in light of the applicable law, the plaintiffs have failed to show that they are entitled to summary judgment on their promissory estoppel claims. First, it is highly doubtful that the letters noted above constitute a promise by Bishop to actively pay the DEP anything. In fact, as the plain language of the February 11th letter indicates, the proceeds were intended to reimburse Farm Family and Smith, and they would merely be "available" to the DEP. Plaintiffs' attempt to turn the use of the word "available" into an affirmative promise to act in *their favor is without* any basis in logic, much less the law. In the present context, the

word "available" indicates that something is there for the taking, not that someone else will perform an act with regard to the item so as to place it in possession of another.

Moreover, even if this language could somehow be construed as a promise to pay, the promisor must reasonably expect that it would induce action or forbearance. It is unlikely that a reasonable attorney in Bishop's position would expect the DEP to forbear from acting under the circumstances presented here. Indeed, with over $62,000.00 at stake, it seems patently *unreasonable* for a party to rely solely on an attorney representing another with interests directly adverse to theirs. Even though attorneys are required to act ethically, there always exists the possibility that the attorney might be mistaken as to his authority to transfer his client's property. Considering the size of their potential recovery, it seems that the DEP's failure even to investigate the legal enforceability of Bishop's alleged promise was negligent, and Bishop could not have reasonably foreseen such inaction.

Additionally, it appears that whatever promises were contained in the letters written to Perkins by Bishop were kept. As mentioned, the most that Bishop promised the DEP was that the proceeds, if received, would be available to satisfy their claim. These funds did in fact become available to the DEP, as well as Smith's other creditors, once Smith received his check. Also, Bishop's statement in paragraph four of the February 11th letter does not justify holding him liable for his failure to immediately notify the DEP that Smith was in receipt of the judgment proceeds. Considering that Bishop notified the DEP on April 10th that Justice Mills had ruled in Smith's favor, it is well within reason that further notice to the DEP would be unnecessary because they had ample time, in the exercise of due diligence, to perfect their interest in the proceeds before they were disbursed.

In light of the foregoing discussion, there appear to be no material facts in dispute, and judgment as a matter of law may be properly rendered.

## Count III – Claims Against Carl W. Smith

Insofar as Bishop made no promises on behalf of Smith regarding payment of the judgment proceeds, plaintiffs cannot prevail over Smith on a claim of promissory estoppel. Pursuant to M.R. Civ. P. 56(c), when appropriate, summary judgment may be rendered against the moving party.

## Count III – Claims Against Acadia Insurance Company

Insofar as plaintiffs assert that they never intended to raise a claim against Acadia based on promissory estoppel, and, in any event, that no such promises were made, summary judgment may be properly rendered.

The entry will be:

> Plaintiffs' motion for summary judgment on count I of their complaint against Carl W. Smith is GRANTED; judgment for plaintiffs in the amount of $39,780.85 plus interest and costs; plaintiffs' motion for summary judgment against Frank H. Bishop, Sr. on count II of their complaint is DENIED; defendant Frank W. Bishop, Sr.'s motion for summary judgment on count II of plaintiffs' complaint is GRANTED; judgment for defendant Frank H. Bishop, Sr. on count II of plaintiffs' complaint; plaintiffs' motion for summary judgment on count II of their complaint against Acadia Insurance Company is DENIED; defendant Acadia Insurance Company's motion for summary judgment on count II of plaintiffs' complaint is GRANTED; judgment for defendant Acadia Insurance Company on count II of plaintiffs' complaint; plaintiffs' motion for summary judgment on count II of their complaint against Carl W. Smith is DENIED; summary judgment for defendant Carl W. Smith on count II of plaintiffs' complaint; plaintiffs' motion for summary judgment on count III of their complaint against defendant Frank H. Bishop, Sr. is DENIED; motion for summary judgment by defendant Frank H. Bishop, Sr. on count III of plaintiffs' complaint is GRANTED; judgment for defendant Frank H. Bishop, Sr. on count III of plaintiffs' complaint; plaintiffs' motion for summary judgment on count III of their complaint

against defendant Carl W. Smith is DENIED; summary judgment for defendant Carl W. Smith on count III of plaintiffs' complaint is GRANTED; judgment for defendant Acadia Insurance Company on count III of plaintiffs' complaint is GRANTED.

Dated: September \_\_\_7\_\_\_, 2004

Donald H. Marden
Justice, Superior Court

(CV-03-280)

STATE OF MAINE - PLAINTIFF

Attorney for: STATE OF MAINE
DENNIS HARNISH
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

DEPARTMENT OF ENVIRONMENTAL PROTECTION - PLAINTIFF

Attorney for: DEPARTMENT OF ENVIRONMENTAL PROTECTION
DENNIS HARNISH
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

vs
CARL W SMITH  - DEFENDANT
156 SOUTH ROAD
MAPLETON ME 04757
Attorney for: CARL W SMITH
ALAN F HARDING
HARDINGS LAW OFFICES
427 MAIN STREET
PO BOX 427
PRESQUE ISLE ME 04769-0427

FRANK H BISHOP SR  - DEFENDANT
428 MAIN STREET PO BOX 311
PRESQUE ISLE ME 04769
Attorney for: FRANK H BISHOP SR
PHILIP M COFFIN III
LAMBERT COFFIN RUDMAN HOCHMAN
477 CONGRESS STREET 14TH FLOOR
PO BOX 15215
PORTLAND ME 04112-5215

ACADIA INSURANCE COMPANY - DEFENDANT

Attorney for: ACADIA INSURANCE COMPANY
BRUCE MALLONEE
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2003-00280

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 11/07/2003

## Docket Events:
11/07/2003 FILING DOCUMENT - COMPLAINT FILED ON 11/07/2003

11/07/2003 Party(s):  STATE OF MAINE
           ATTORNEY - RETAINED ENTERED ON 11/07/2003