1997 ME 162

**Chris EMERY, et al.**

v.

**HUSSEY SEATING CO., et al.**

v.

**LINAMAR CORPORATION.**

Supreme Judicial Court of Maine.

Argued June 13, 1997.

Decided July 21, 1997.

Peter W. Schroeter (orally), Smith Elliott Smith & Garmey, Saco, for plaintiff.

Jeffrey T. Edwards (orally), Daniel Rapaport, Timothy J. Bryant, Preti, Flaherty, Beliveau & Pachios, LLC, Portland, for Hussey Seating Co.

Graydon G. Stevens (orally), Kelly, Remmel & Zimmerman, Portland, for Linamar Corp.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendants, Hussey Seating Co. and Hussey Seating Canada, Ltd. (Hussey), appeal from the judgment entered on a jury verdict in the Superior Court (York County, *Crowley, J.*) in favor of plaintiffs, Chris and Donna Emery, and in favor of defendant Linamar Corporation. The jury found Hussey liable to plaintiffs for breach of warranty and absolved Linamar of any liability. Hussey contends that the court erred by failing to instruct the jury with respect to Linamar's common law duty to indemnify. Hussey also argues that the court erred by instructing the jury concerning contribution. Finding no error, we affirm the judgment.

[¶ 2] The facts as developed at trial may be summarized as follows: While using a power drill and winch to raise a basketball backboard in the gymnasium at Bonny Eagle High School, plaintiff Chris Emery, a custodian at the school, was injured. According to Ronald Goulet, an expert witness at the trial, the cause of Emery's injury was the Hussey "726" winch used in the school's backboard system. The tapered pin holding the winch together disengaged from its position, made

contact with the other components of the winch, and caused the winch to jam. Due to this jamming of the winch and resulting kickback of the power coming from the drill, Emery was slammed into a doorway and his hand was jammed inside the drill. His thumb, wrist, and arm were injured to such an extent that he eventually was forced to leave his job at Bonny Eagle. Goulet testified that the Hussey winch was defective in its design because a tapered pin is inappropriate for use as a connector of rotating machine parts given its tendency to disengage under a load.

[¶ 3] Emery filed a complaint against Hussey,[1] alleging strict liability, breach of warranty, and negligence. This complaint was later amended to include Donna Emery as a plaintiff and to include her claim for loss of consortium. Hussey then filed a third-party complaint against Linamar Corporation alleging its entitlement to contribution or indemnity by Linamar. Plaintiffs filed their own complaint against Linamar, again alleging strict liability, breach of warranty, and negligence, and Linamar filed a cross-claim against Hussey for contribution or indemnity. Before the trial, plaintiffs dismissed their negligence claims against both defendants.

[¶ 4] At the trial, the testimony regarding the relationship between Hussey and Linamar was as follows: It was undisputed that Linamar assembled the "726" winch for Hussey. While stating that his company did not design the winch, John Forshaw of Hussey, testified that the company did hire a draftsman when developing its backboard system who, in conjunction with other Hussey employees, arrived at a "conception design" of what was desired. In addition, it was undisputed that Hussey provided Linamar with a winch at the beginning of their relationship and asked whether Linamar could produce the winch.

[¶ 5] The "726" winch was sold by Hussey as a part of its basketball equipment line. The name "Hussey Seating" was molded into the winch cover. It was described as a manual winch in Hussey's catalogue and the standard equipment that came with the winch was a hand crank. Manual use of the winch, however, is slow and difficult. The Hussey catalogue offered, as optional equipment for the winch, a portable electric winch winder. The catalogue stated that the winch could be run with any electric drill meeting certain specifications. If asked, Hussey would saw off the manual handle so that a drill could be used. Frank Hasenfratz of Linamar testified that Linamar was not told of the winch's purpose when it was retained by Hussey to produce the winch. No one told Hasenfratz that it was to be used with a power drill and he was told that it was a manual winch. When the winch's operation was demonstrated to Hasenfratz, it was demonstrated with the manual crank.

[¶ 6] Hussey asked the court to instruct the jury as to Linamar's duty to indemnify it for any damages it would be required to pay the plaintiffs.[2] The trial court refused to give such an instruction, holding that an instruction as to "apportionment based upon the relative blame worthiness of the parties is the appropriate instruction to give." The court, in fact, instructed the jury regarding the defendants' cross-claims for contribution, explaining concepts of comparative fault within the context of strict liability and warranty claims. Hussey objected to the contribution instruction, given its position on indemnity, and objected to the use of the word "negligence" in the charge because plaintiffs dropped their negligence claims. The court overruled Hussey's objections.

[¶ 7] The jury found neither defendant strictly liable, but found Hussey, and not

---

1. The parties stipulated at trial that Hussey Seating Co. and Hussey Seating Canada, Ltd. could be treated as one entity.

2. The proposed instruction provided:
 *Indemnity*
 While contribution provides for proportionate allocation of liability between two parties, indemnity shifts the entire loss from one tortfeasor, who has been compelled to pay it, to another who should bear the loss instead.

A manufacturer has an implied duty to a seller to indemnify, where the manufacturer provides a defective product and the seller's liability stems solely from its failure to discover the defect.

If a manufacturer supplies a defective product to a retailer, who sells it to a customer, who recovers from the retailer for an injury incurred, the retailer may recover in indemnity against the manufacturer.

Linamar, liable for breach of an implied warranty of merchantability. It awarded Chris Emery $366,000 and awarded Donna Emery $34,000. Hussey moved for a new trial based in part upon the failure of the court to give the indemnity instruction and the court's use of the word "negligence" in its charge. This motion was denied. Hussey appealed from the judgment entered on the verdict.

[¶ 8] A trial court's decision not to grant a new trial will not be disturbed unless a clear and manifest abuse of discretion is shown. *Ames v. Dipietro–Kay Corp.,* 617 A.2d 559, 561 (Me.1992). Hussey's first claim for a new trial concerns the court's failure to instruct the jury with respect to indemnity. A party is only entitled to a requested jury instruction when that instruction:

(1) states the law correctly;

(2) appears to be supported by the facts of the case;

(3) is not misleading or confusing;

(4) is not already sufficiently covered in the given charge; and

(5) when refusal to give the instruction would result in prejudice to the party requesting it.

*Hatch v. Maine Tank Co., Inc.,* 666 A.2d 90, 94 (Me.1995). Hussey's proposed instruction is purportedly based on section 886B of the RESTATEMENT (SECOND) OF TORTS, a section of the RESTATEMENT never recognized as the law in Maine. We need not decide today whether Maine would embrace the doctrine of equitable indemnity set out in section 886B because no issue involving that doctrine is generated by the facts of the present case.

[¶ 9] Current doctrines in tort law permit plaintiffs to recover full damages from joint tortfeasors without regard to their respective culpability. Contribution and equitable indemnification have developed as equitable remedies in this situation. We have described these remedies as follows:

Contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely. Differing thus in their effect, these remedies are properly applicable in different situations. Contribution is appropriate where there is a common liability among the parties, whereas indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties.

*Roberts v. Am. Chain & Cable Co.,* 259 A.2d 43, 50 (Me.1969).

[¶ 10] A joint tortfeasor's right to indemnity can arise in three circumstances: (1) indemnity may be agreed to expressly; (2) a contractual right of indemnification may be implied from the nature of the relationship between the parties; or (3) a tort-based right to indemnity may be found when there is a great disparity in the fault of the parties. *Araujo v. Woods Hole, Martha's Vineyard, etc.,* 693 F.2d 1, 2 (1st Cir.1982). The right to indemnity set out in section 886B is one formulation of the tort-based right defined in terms of unjust enrichment. RESTATEMENT (SECOND) OF TORTS § 886B cmt. c (1965). The applicable portion of that section provides:

§ 886 Indemnity Between Tortfeasors

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

. . . .

(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect. . . .

The comment to clause (d) explains as follows: "The supplier of a defective chattel is

required to indemnify a retailer regardless of whether his tort liability is based on negligence or strict liability, so long as the retailer has failed to discover the defect before selling the product." RESTATEMENT (SECOND) OF TORTS, *supra,* § 886B cmt. h.

[¶ 11] Cases interpreting the above section, including the case cited by Hussey in the body of its proposed jury instruction, have held that tort-based indemnity between a seller and a retailer only applies when the "seller's liability stems *solely from* a failure to discover the defect." *Park v. Forman Bros., Inc.,* 785 F.Supp. 1029, 1030 (D.D.C. 1992) (citing *East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1127 (D.C.App.1990)) (emphasis added).As stated by the *East Penn* court, the manufacturer of a defective product must indemnify a seller when:

(1) the seller reasonably relies upon the manufacturer's knowledge and skill in making the product free from defects; and

(2) any negligence on the seller's part consists of, at most, a failure to discover the defect.

*East Penn,* 578 A.2d at 1127.

[¶ 12] This interpretation is in accord with cases affording indemnification to "passive" as opposed to "active" tortfeasors. *See* RESTATEMENT (SECOND) OF TORTS, *supra,* § 886B, cmt c. "Passive" tortfeasors, or those whose liability arises merely from their failure to discover or prevent the misconduct of another, have been held to be entitled to indemnity. *Schneider Nat'l Inc. v. Holland Hitch Co.,* 843 P.2d 561, 574 (Wyo.1992). A seller has been defined as "passive" if it is nothing more than a retailer in the chain of distribution. If the seller is not simply a passive conduit through which goods pass, however, it is not entitled to indemnity and contribution is appropriate. *Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re: Consol. Vista Hills Retaining Wall Litig.),* 119 N.M. 542, 893 P.2d 438, 443

(1995); *see* Dragan M. Cetkovic, *Loss Shifting: Upstream Common Law Indemnity in Products Liability,* 61 DEF. COUNS. J. 75 (1994) (indemnity appropriate in chain of production when appropriate to shift risk of loss up to those who can prevent defect in product).

[¶ 13] In the present case, the facts do not support the assertion that Hussey was merely an innocent seller, i.e., a passive conduit in the chain of distribution. It took actions that blurred the line between its status as a seller and that of a manufacturer. Hussey provided Linamar with the design of the winch. *Cf.* RESTATEMENT (SECOND) OF TORTS, *supra,* § 404, cmt. a (when employer provides contractor with plans to make chattel, contractor not required to sit in judgment of plans provided). In addition, the evidence supports the conclusion that Hussey sold the winch as "its own." Section 400 of the RESTATEMENT (SECOND) OF TORTS provides that: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Hussey was not a mere seller and the trial court did not err by refusing to give the indemnity instruction, nor did it abuse its discretion by failing to grant Hussey a new trial.

 [¶ 14] Hussey also contends that the court's use of the word "negligence" in its contribution instruction confused the jury. The jury found only Hussey liable for the damages incurred by the plaintiffs, and it could not, and in fact did not, engage in a contribution analysis.[3] Thus, any error in the court's contribution instruction was necessarily harmless. M.R.Civ. P. 61.

The entry is:

Judgment affirmed.

---

3. The jury's special verdict form instructed the jurors as follows: "If you found both Hussey Seating Co. and Linamar Corp. liable to plaintiff in your answers to questions 1 through 4, answer the remaining questions." Those remaining questions, concerning contribution, were left unanswered.