STATE OF MAINE
CUMBERLAND, ss

LAURIE L. CHAMPAGNE
and CHAMP, INC.,

Plaintiffs

v.

PHENIX TITLE SERVICES,
LLC, et al.,

Defendants

STATE OF MAINE
Cumberland, ss. Clerk's Office

JAN 2 7 2016

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-400

ORDER ON DEFENDANT PHENIX
TITLE SERVICES, LLC'S MOTION
FOR SUMMARY JUDGMENT

Before the court is defendant Phenix Title Services, LLC's motion for summary judgment on plaintiffs' amended complaint and on defendant Phenix's cross-claim against William G. Silber. For the following reasons, defendant's motion is granted.

FACTS

Plaintiff Laurie Champagne is a real estate broker employed by plaintiff Maine Real Estate Network, which does business under the name Champ, Inc. (Supp. S.M.F. ¶ 1.) Defendant Phenix Title Services, LLC is a limited liability company that provides closing services for lenders, real estate brokers, and individuals. (Id. ¶ 2.) Defendant Dr. William Silber is an individual residing in Texas and the seller of property located at 7 Balsam Lane in Falmouth, Maine (the property). (Id. ¶ 3.)

On March 23, 2013, defendant Silber and his wife entered into an Exclusive Right to Sell Listing Agreement (listing agreement) with Maine Real Estate Network for the sale of the property. (Id. ¶ 11.) Under the listing agreement, signed by plaintiff Champagne on behalf of her employer, the Silbers agreed to pay a commission of 6% of the sale price to Maine Real Estate Network. (Id. ¶ 12.) The listing agreement expired on December 31, 2013 without a buyer. (Id. ¶¶ 13, 15.)

1

After the listing agreement expired, the Silbers entered into a contract with Tony Langdon to sell the property at an auction on January 18, 2014 (auction agreement). (Id. ¶ 13.) Under the auction agreement, the Silbers agreed to pay plaintiff Champagne 5% of the auction sales price at the closing as payment for her work under the listing agreement. (Id. ¶ 15.) The Silbers also agreed to inform Mr. Langdon of any encumbrances on the property and to obtain a release of those encumbrances. (Id. ¶ 14.) Defendant Phenix never entered into any contract with plaintiff Champagne. (Id. ¶ 18.)

On February 19, 2014, Norway Savings Bank, the buyers' lender, hired defendant Phenix to do a title search and provide closing services. (Id. ¶ 19.) That same day, defendant Phenix performed a title search on the property. (Id. ¶ 27.) The title search did not reveal any lien in favor of Katahdin Trust Company (Katahdin). (Id.) On February 28, 2014, a lien in the amount of $155,439.89 was recorded on the property in favor of Katahdin (Katahdin lien) as a result of a separate action against defendant Silber, Katahdin Trust Co. v. Silber, CARSC-RE-14-09. (Id. ¶¶ 3, 28.)

On March 10, 2014, a writ of attachment was recorded against "[a]ll the right, title and interest defendant has in any real estate in Cumberland County." (Id. ¶ 29.) Defendant Silber was personally served with that writ on March 19, 2014. (Id. ¶ 30.) Also on March 19, the Silbers signed an affidavit of encumbrances attesting that only three liens existed on the property, and that these liens were in favor of Key Bank, TD Bank, and Bank of America. (Id. ¶ 24.) The affidavit of encumbrances further stated that, in the event any payoff to a lienholder was deficient, the Silbers would remit the difference to defendant Phenix within 48 hours. (Id.) The Silbers also signed a title insurance affidavit attesting that there were no other liens on the property. (Id. ¶ 26.)

The closing occurred on March 21, 2014. (Id. ¶ 33.) Sometime after the closing, defendant Phenix discovered that its file was short $39,500.00 as a result of Mr.

2

Langdon's alleged failure to deliver the buyers' premium at closing. (Id. ¶ 34.) As a result, only $47,782.31 was available to pay approximately $81,000.00 owed to plaintiff Champagne and Mr. Langdon. (Id. ¶ 35.) In response, defendant Phenix stopped payment on the following previously issued checks: $2,468.76 to plaintiff Champagne; $35,075.41 to plaintiff Champ, Inc.; $35,075.42 to Mr. Langdon; and $7,900.00 to Mr. Langdon's company. (Id. ¶¶ 25, 35-36.) Defendant Phenix stopped these payments because plaintiff Champagne, Mr. Langdon, and their respective companies were defendant Silber's only unsecured creditors. (Id. ¶ 35.) Defendant Phenix wrote to Mr. Langdon on March 25, 2014 to inform him that it had stopped payment until defendant Champagne and Mr. Langdon could agree how to divide the available funds. (Id. ¶ 37.)

On March 26, 2014, defendant Phenix recorded the deed to the property and discovered the Katahdin lien. (Id. ¶ 38.) In defendant Phenix's view, the Katahdin lien meant that Katahdin now had priority over the funds earmarked for unsecured creditors. (Id. ¶ 39.) That same day, defendant Phenix wrote to Mr. Langdon to inform him that the Katahdin lien "precludes all other claims" and that "there will be no proceeds of any kind left for you or the other creditors." (Id. ¶ 40.) Defendant Phenix wrote to plaintiff Champagne to inform her of its view the following day. (Id. ¶ 41.)

On June 5, 2014, defendant Phenix suggested to plaintiff Champagne that she could seek to intervene in Katahdin Trust Co. if she believed the funds had been wrongly attached. (Id. ¶ 48.) Plaintiff Champagne did not appear in the attachment proceedings, and on September 9, 2014, Katahdin, defendant Phenix, and the buyers agreed to discharge the Katahdin lien in favor of a $45,000.00 payment to Katahdin from defendant Silber's trusteed funds. (Id. ¶ 49.) Katahdin then released defendant Phenix from all obligations under the attachment order. (Id.)

3

PROCEDURAL HISTORY

Plaintiffs filed a complaint against defendant Phenix on September 17, 2014, and alleged four causes of action: count I, declaratory judgment; count II, negligent misrepresentation; count III, conversion; and count IV, passing bad checks. Defendant Phenix filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(7) for failure to join necessary parties, or, in the alternative, to join those parties. On December 11, 2014, the court denied the motion to dismiss. The court also denied the motion to join as to Mr. Langdon, but granted it as to defendant Silber. In an amended complaint filed on March 31, 2015, plaintiffs joined defendant Silber.

On April 10, 2015, defendant Phenix filed a cross-claim against defendant Silber and alleged one count of indemnification and one count of contribution. On October 13, 2015, defendant Phenix moved for summary judgment on all counts in plaintiffs' amended complaint and on its cross-claim. Plaintiffs opposed the motion on November 9, 2015. Plaintiffs admitted all but one of defendant Phenix's 49 statements of material fact and included additional statements of material fact. Defendant Phenix filed a reply on November 16, 2015.

DISCUSSION

1. Standard of Review

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one having the potential to affect the outcome of the suit." Burdzel v. Sobus, 2000 ME 84, ¶ 6, 750 A.2d 573. "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." Id. "To survive a defendant's motion for a summary judgment, a plaintiff must produce evidence that, if produced at trial, would

4

be sufficient to resist a motion for a judgment as a matter of law." Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924.

2. Plaintiffs' Amended Complaint

a. Declaratory Judgment

Plaintiffs seek a declaratory judgment that defendant Phenix wrongfully stopped payment on the checks. (Pls.' Opp'n to Def.'s Mot. Summ. J. 2-3.) Defendant Phenix argues that the Katahdin lien required it to stop payment because Katahdin was a secured creditor and insufficient funds existed to pay both secured and unsecured creditors. (Def.'s Mot. Summ. J. 7-9.) An interest in real or personal property may be attached by:

> [F]iling in the registry of deeds for the county in which the property is located ... an attested copy of the court order approving the real or personal property attachment, provided that the order is filed within 30 days after the order approving the attachment ... Notwithstanding section 4454, the filing constitutes perfection of the attachment ....

14 M.R.S. § 4154 (2015). The Katahdin lien was issued and recorded on February 28, 2014. As a result, Katahdin became a secured creditor as of February 28 in the amount of $155,439.89. Katahdin, therefore, had priority over plaintiff Champagne, an unsecured creditor, at the time that defendant Phenix stopped payment on the checks in late March. Because only $47,782.31 remained available to creditors, defendant Phenix properly determined that Katahdin was entitled to the entire amount and no funds were available for plaintiff Champagne. Plaintiffs do not dispute any of the facts underlying this analysis. (Opp. S.M.F. ¶¶ 28, 35, 39.) As a result, there is no genuine issue as to whether defendant Phenix properly stopped payment.

Plaintiffs argue that the Katahdin lien is essentially irrelevant because defendant Phenix stopped payment as a result of Mr. Langdon's alleged failure to deliver the buyers' premium, and defendant Phenix did not even discover the Katahdin lien until

5

after it stopped payment. (Pls.' Addt'l S.M.F. ¶¶ 9, 12; Pls.' Opp'n to Def.'s Mot. Summ. J. 3.) This argument is unpersuasive because defendant Phenix's knowledge of the Katahdin lien is not a prerequisite to its effectiveness. See 14 M.R.S. § 4154 ("[T]he filing constitutes perfection of the attachment . . . ."). Further, even if plaintiffs can show that defendant Phenix erred in failing to collect the buyers' premium, (Pls.' Addt'l S.M.F. ¶¶ 6-8)¹, that error proximately caused no harm to plaintiffs. The Katahdin lien was in effect as of February 28 and precluded plaintiffs from recovering payment in this transaction, regardless of any errors defendant Phenix may have made after February 28.

Plaintiffs next argue that they can recover from Ms. Silber because she co-owned the property and was not subject to the attachment order. (Pls.' Opp'n to Def.'s Mot. Summ. J. 1-3.) A creditor can attach only the interest of the debtor joint tenant. Szelenyi v. Miller, 564 A.2d 768, 769 (Me. 1989). Ms. Silber is not a party to this action, and the court may not determine her interest in the property. See 14 M.R.S. § 5963 (2015) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding.").

Finally, plaintiffs argue that the property is exempt from attachment up to $47,500.00. (Pls.' Opp'n to Def.'s Mot. Summ. J. 2.) A debtor's property is exempt from attachment up to $47,500.00 when the debtor or a dependent of the debtor uses the property as a residence. 14 M.R.S. § 4422(1)(A) (2015). A debtor "bears the burden of establishing that he is entitled to a homestead exemption by demonstrating that (1) the property subject to attachment and execution is in fact his residence . . . and (2) he

---

¹ It does not appear that all the exhibits referred to in the Hungerford affidavit are attached to the affidavit.

6

intends to use the exempt proceeds to purchase another residence." Daniels v. Daniels, 593 A.2d 658, 660 (Me. 1991). Plaintiffs admit that defendant Silber has resided in Texas since 2013, (Opp. S.M.F. ¶ 3), and they do not assert that he intended to use any exempt proceeds to purchase another residence. As a result, there is no genuine issue of material fact as to whether the exemption applies.

   b. Conversion

Plaintiffs argue that defendant Phenix is liable for conversion because it retained funds to which plaintiffs were entitled. (Pls.' Opp'n to Def.'s Mot. Summ. J. 3.) The elements of conversion are

> (1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

Withers v. Hackett, 1998 ME 164, ¶ 7, 714 A.2d 798.

For the reasons discussed above, plaintiffs cannot show a right to possession of the funds at the time that defendant Phenix cancelled the checks. If defendant Phenix had not cancelled the checks, plaintiffs and defendant Phenix would have been liable to Katahdin for conversion. In Ne. Bank of Lewiston & Auburn v. Murphy, the defendant's insurer in a car accident case distributed settlement proceeds to the plaintiff's attorney, Murphy, despite the existence of a lien in favor of a bank on the settlement proceeds. 512 A.2d 344, 346 (Me. 1986). Attorney Murphy then distributed the proceeds to himself, the plaintiff, Ms. Crochere, and several third parties. Id. The court held that both the insurer and the attorney were liable to the bank for conversion and noted that a party is liable even when he or she "is unaware of the existence of another's rights in the property." Id. at 347. As a result, plaintiffs and defendant Phenix would have been liable to Katahdin even though they did not know of the Katahdin

7

lien until after defendant Phenix cancelled the checks. Plaintiffs therefore cannot prevail on their conversion claim.

### c. Negligent Misrepresentation

Although somewhat unclear, plaintiffs appear to argue that plaintiff Champagne signed a lien waiver in reliance on some misrepresentation by defendant Phenix. (Pls.' Addt'l S.M.F. ¶ 15; Pls.' Opp'n to Def.'s Mot. Summ. J. 3-4.) A defendant is liable for negligent misrepresentation if (1) in a transaction in which the defendant had a pecuniary interest, (2) the defendant supplied false information for the guidance of the plaintiff, (3) without exercising reasonable care or competence, and (4) the plaintiff justifiably relied on that false information and suffered pecuniary loss. Binette v. Dyer Library Ass'n, 688 A.2d 898, 903 (Me. 1996). There is no evidence of any lien waiver in the record. Further, plaintiffs have not adequately alleged a specific misrepresentation on the part of defendant Phenix. Guiggey v. Bombardier, 615 A.2d 1169, 1173 (Me. 1992) (explaining that a false representation is an "essential element" of negligent misrepresentation). On this record, plaintiff Champ, Inc. agreed to payment of $35,075.41. (Pls.' Addt'l S.M.F. ¶ 15; Def.'s Reply to Pls.' Addt'l S.M.F. ¶ 15.) Plaintiffs have therefore failed to allege a prima facie case of negligent misrepresentation.

### d. Passing Bad Checks

Plaintiffs allege that defendant Phenix is liable for passing bad checks under 14 M.R.S. § 6071(1). (Pls.' Opp'n to Def.'s Mot. Summ. J. 3.) That statute provides:

> In any action against a person liable for a dishonored check, the holder may recover the amount of the check, the court costs and the processing charges incurred by the holder, plus interest at the rate of 12% per annum from the date of dishonor if:
> A. The holder gives notice pursuant to section 6073 for payment of the check; and
> B. The person liable fails to tender the amount of the check, plus bank fees and mailing costs, within 10 days of receiving the notice set forth in section 6073.

8

14 M.R.S. § 6071(1) (2015). A check is "dishonored" when it is presented for payment and the bank refuses payment due to insufficient funds. See BLACK'S LAW DICTIONARY 536 (9th ed. 2009) (defining "dishonor" as "[t]o refuse to accept or pay (a negotiable instrument) when presented"); Me. Family Fed. Credit Union v. Sun Life Assurance Co., 1999 ME 43, ¶¶ 4-5, 727 A.2d 335 (credit union was notified checks had been dishonored after they were presented for payment and refused). In support of its argument that defendant Phenix passed bad checks, plaintiffs assert only that defendant Phenix stopped payment on the checks. (Pls.' Addt'l S.M.F. ¶ 12.) This fact is not in dispute, and plaintiffs have offered no evidence that the checks were ever presented for payment and refused. As a result, there is no genuine issue of material fact as to whether the checks were dishonored, and the statute does not apply.

### 3. Defendant Phenix's Cross-Claim

Defendant Phenix seeks indemnification for defendant Silber's alleged failure to: (1) notify defendant Phenix of the Katahdin lien, (2) provide sufficient funds to satisfy all of his payoffs, and (3) pay plaintiff Champagne the money he owed her. (Def.'s Mot. Summ. J. 18.) By signing the title insurance affidavit, defendant Silber agreed to:

> [I]ndemnify and hold harmless [defendant Phenix] from any loss, liability, costs, expenses and attorneys' fee, including attorneys' fees to enforce this agreement, because of any errors or incorrectness of this affidavit and because of any defect, liens, encumbrances or other matters currently affecting or that may affect the title to the land before the recordation of our conveyance or mortgage.

(Supp. S.M.F. ¶ 26.); see Emery v. Hussey Seating Co., 1997 ME 162, ¶ 10, 697 A.2d 1284. Plaintiffs have not raised a genuine issue of material fact regarding the applicability of the indemnity agreement and defendant Phenix is entitled to summary judgment on count I of its cross-claim. Because defendant Phenix is not liable to plaintiffs, defendant

9

Phenix does not require contribution. See Emery, 1997 ME 162, ¶ 9, 697 A.2d 1284; Roberts v. Am. Chain & Cable Co., 259 A.2d 43, 50 (Me. 1969).

Defendant Phenix has not included in its statements of material fact any amounts for which it may be entitled to indemnification. A hearing on damages will be scheduled. Further, defendant Phenix requests the court order the return to defendant Silber of $2,782.31. (Def.'s Mot. Summ. J. 20.) There is nothing in the statements of material fact that permits the court to take that action.

CONCLUSION

No genuine issues of material fact have been raised as to whether defendant Phenix properly stopped payment on the checks and as to whether defendant Phenix is liable for negligent misrepresentation, conversion, or passing bad checks. Further no genuine issues of material fact have been raised as to whether the indemnity agreement applies.

The entry is

> Defendant Phenix Title Services, LLC's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant Phenix Title Services, LLC and against Plaintiffs Laurie L. Champagne and Champ, Inc. on Plaintiffs' Amended Complaint.
>
> Judgment is entered in favor of Cross-Claim Plaintiff Phenix Title Services, LLC and against Cross-Claim Defendant William G. Silber on Count I of Cross-Claim Plaintiff Phenix Title Services, LLC's Cross-Claim.
>
> Judgment is entered in favor of Cross-Claim Defendant William G. Silber and against Cross-Claim Plaintiff Phenix Title Services, LLC on Count II of Cross-Claim Plaintiff Phenix Title Services, LLC's Cross-Claim.

Dated: January 27, 2016

Nancy Mills
Justice, Superior Court

10

STATE OF MAINE
CUMBERLAND, ss

LAURIE L. CHAMPAGNE
And CHAMP, INC.,

        Plaintiffs

v.

PHENIX TITLE SERVICES,
LLC,

        Defendant

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-400 ✓
NM-CUM-12-10-14

ORDER ON DEFENDANT'S
MOTION TO DISMISS OR FOR
JOINDER OF PARTIES

11 DEC '14 AM8:45

## I.    BACKGROUND

### A. Procedural Posture

In their complaint, plaintiffs Laurie L. Champagne and Champ, Inc. seek declaratory relief and damages against defendant Phenix Title Services, LLC arising out of a real estate transaction. Plaintiffs allege the following claims: count I: declaratory judgment; count II: negligent misrepresentation; count III: conversion; and count IV: passing bad checks. Before the court is defendant's motion to dismiss pursuant to M.R. Civ. P. 12(b)(7) for failure to join necessary parties under M.R. Civ. P. 19 or, in the alternative, a motion to join those parties. For the following reasons, the motion to dismiss is denied and the motion to join is granted as to William G. Silber and denied as to Tony Langdon.

### B. Facts[1]

Plaintiff Laurie Champagne is an individual and plaintiff Champ, Inc. is a Maine corporation. (Compl. ¶¶ 2-3.) Defendant Phenix Title Services, LLC is a foreign limited liability company with an office in Portland, Maine. (Compl. ¶ 4.)

---

[1] Some facts discussed in the memoranda do not appear in the complaint or documents the court can consider.

1

Plaintiff Champagne provided services pertaining to the sale of a house in Falmouth, Maine and plaintiff Champ, Inc. spent money to prepare and maintain the house for sale. (Compl. ¶ 5.) The closing took place on March 21, 2014. At the closing, defendant issued two checks, one for $2,468.76 to plaintiff Champagne, and the other for $35,075.41 to plaintiff Champ, Inc. (Compl. ¶ 6.)

Five days later, defendant stopped payment on the checks because of a real estate title encumbrance on the property. (Compl. ¶ 7.) Plaintiffs made several demands for defendant to honor the checks but defendant refused. (Compl. ¶ 8.) On May 28, 2014, plaintiffs delivered to defendant's attorney a written Notice for Nonpayment pursuant to 14 M.R.S. § 6073 (2013). (Compl. ¶ 9.) On June 25, 2014, plaintiffs delivered a letter to defendant's attorney, in which plaintiffs requested an accounting from defendant. (Compl. ¶ 10.) Defendant did not provide the accounting and stated it was holding $47,782.31 as a trustee in a separate matter in the Maine Superior Court, Katahdin Trust Company v. William G. Silber et al., CARSC-RE-14-09. (Compl. ¶ 10.)

II.    DISCUSSION

A. Motion to Dismiss Under Rule 12(b)(7) and Rule 19 Standard

Defendant contends William G. Silber, the seller of the Falmouth property, and Tony Langdon, the auctioneer who conducted the sale, are necessary parties under M.R. Civ. P. 19. (Def.'s Mot. Dismiss 1, 9.) Rule 19 requires joinder of parties subject to service of process and deemed necessary by reference to the following:

> [I]f (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect

2

that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

M.R. Civ. P. 19(a). Joinder under Rule 19 "protect[s] those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." Peoples Heritage Bank v. Grover, 609 A.2d 715, 716 (Me. 1992) (citations omitted). The rule protects the present parties by ensuring that "issues will not have to be relitigated," and avoids prejudice to unjoined but interested parties. Ocwen Fed. Bank, FSB v. Gile, 2001 ME 120, ¶ 14, 777 A.2d 275 (citations omitted).

Dismissal under Rule 19(b) is discretionary,[2] and appropriate only when joinder of parties deemed necessary is not possible. Larrabee v. Town of Knox, 2000 ME 15, ¶ 11, 744 A.2d 544; see also Grover, 609 A.2d at 716 n.1 (noting dismissal is proper under Rule 19(b) where absent parties are "indispensable" to the action and cannot be joined). If, however, a necessary party can be joined, joinder is mandatory. M.R. Civ. P. 19(a) ("[T]he court shall order that the person be made a party.")

---

[2] The court shall determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable" and considers the following factors:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

M.R. Civ. P. 19(b).

3

B. Mr. Silber Is a Necessary Party

The parties dispute the consequences that flow from the attachment in the Katahdin case. Based on plaintiffs' complaint and relevant documents,[1] there is no dispute that the basis for this suit is defendant's cancellation of the checks to plaintiffs and there was no contractual relationship between plaintiffs and defendant.

According to the HUD-1 settlement statement and attachments, payments in the amount of $2,468.76 to plaintiff Champagne and $35,075.41 to plaintiff Champ, Inc. were to be deducted from the sale proceeds paid to Mr. Silber. (Def.'s Mot. Dismiss Ex. A.) After the closing, defendant received a trustee summons from the Katahdin case that showed an attachment had been ordered on Mr. Silber's property and requested defendant disclose any property held. (Def.'s Mot. Dismiss Ex. F.) Defendant disclosed to the court that it held $47,782.31 from the Falmouth property sale. (Def.'s Mot. Dismiss Ex. G.) The attachment in favor of Katahdin Trust Company was eventually released. (Def.'s Reply Ex. A.)

In defendant's view, the order, attachment, and trustee process gave Katahdin Trust Company priority as a secured creditor and compelled defendant to cancel the checks issued to plaintiffs. Defendant argues payment for plaintiffs'

---

[1] While ordinarily a court may not examine documents outside the pleadings on a motion to dismiss, the Law Court has recognized an exception for "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." Moody v. State Liquor & Lottery Comm'n, 2004 ME 20, ¶ 10, 843 A.2d 43. Plaintiffs aver in the complaint that defendant was responsible for conducting the closing; the accuracy of documents from the closing has not been challenged. The HUD-1 settlement statement may therefore be properly considered without converting the motion to dismiss to a motion for summary judgment. Id. (Ex. A attached to Def.'s Mot.) The court refers to the trustee summons and other documents from the Katahdin case and the deed because they are public documents. (Exhs. B, C, D, F, G.)

4

services arose from an agreement with Mr. Silber or Mr. Langdon and because defendant merely complied with the court's order in the Katahdin case, any recourse plaintiffs may have for nonpayment is against Mr. Silber or Mr. Langdon or both. (Def.'s Mot. Dismiss 6-7.)

Plaintiffs argue that responsibility for the underlying issue that led defendant to cancel the checks, the attachment in the Katahdin case, rests with defendant because it failed to record immediately the deed for the Falmouth property. (Pls.' Opp. 2.) Plaintiffs contend that had defendant recorded the deed prior to the attachment, the checks would have been honored and this dispute would not have arisen. (Id. 1-2.)

On this sparse record, Mr. Silber appears to be a necessary party, while Mr. Langdon is not.· Plaintiffs seek compensation for the "services" provided to facilitate the sale of the Falmouth property. (Compl. ¶ 5.) Under the HUD-1 settlement statement, plaintiffs were entitled to compensation from the sale proceeds to Mr. Silber. Aside from the requirement to issue the checks at the parties' request, there was no contractual relationship between plaintiffs and defendant.

As noted, under Rule 19(a), a party is necessary either if "in the person's absence complete relief cannot be accorded among those already parties," or if a

---

· The details of any agreements or understandings among Mr. Silber, Mr. Langdon, and plaintiffs are not apparent from the record. Mr. Langdon's status as a necessary party is far from clear. The HUD-1 settlement statement lists payoffs to plaintiff Champagne in the amount of $2,468.76 and to Mr. Langdon in the amounts of $35,075.42 and $1,377.35. An attachment to the document allocates another $35,075.41 to plaintiff Champ, Inc. (Def.'s Mot. Dismiss Ex. A.) In the motion to dismiss, defendant alleges that because Mr. Langdon directed defendant to issue the checks to plaintiffs, "he may stake a claim to a portion of the funds." (Def.'s Mot. Dismiss 9.) That is not a matter of this record. Even if this was the arrangement, Mr. Langdon's interest in plaintiff Champagne's commission is speculative and not sufficient to deem Mr. Langdon a necessary party in this action. Mr. Langdon's potential claims against Mr. Silber similarly do not make Mr. Langdon a necessary party to this pending suit.

5

present party risks "incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." M.R. Civ. P. 19(a)(1), (2)(ii). Having used the escrowed funds to satisfy Mr. Silber's other debt obligations in the Katahdin case, defendant now risks incurring additional liability. See M.R. Civ. P. 19(a)(2)(ii). Plaintiffs have sued defendant for an obligation that Mr. Silber may owe. Furthermore, any relief could prejudice Mr. Silber, including any claim to any money defendant continues to hold. (Def.'s Reply 4.) If plaintiffs prevail, defendant may seek indemnification from Mr. Silber, which would require re-litigation of the issues in this case, an inefficient result that Rule 19 is designed to avoid. See Ocwen, 2001 ME 120, ¶ 14, 777 A.2d 275.

In opposing the motion to dismiss, plaintiffs claim other potential parties "had nothing to do with Defendant's reason for putting a stop payment on the checks." (Pl.'s Opp. 3.) Mr. Silber's failure to pay other creditors, however, resulted in the attachment that led defendant to stop payment. (Def.'s Mot. Dismiss Ex. F.) Plaintiffs primarily focus on how defendant handled recording the deed and whether defendant had adequate justification to cancel the checks. The court need not reach these issues at this stage of the proceeding. In light of the interests at stake and the relief sought, Mr. Silber is a necessary party who must first be joined.

### C. Silber Must Be Joined

Plaintiffs do not address the issue of whether Mr. Silber can be joined. Based on this record, it appears Mr. Silber can be made a party to this lawsuit. Accordingly, Mr. Silber must be joined and defendant's motion to dismiss must be denied. Larrabee, 2000 ME 15, ¶¶ 10-11, 744 A.2d 544. If adding Mr. Silber as a

party to this lawsuit proves impossible, the court may at a later date consider whether this action can proceed in his absence. M.R. Civ. P. 19(b).

The entry is

> William Silber will be joined as a necessary party.
>
> Defendant's Motion to Dismiss is DENIED.

Date: 12-10-14

Nancy Mills
Justice, Superior Court

7

ANDRE J HUNGERFORD ESQ
PO BOX 7584
PORTLAND ME 04112-7584

THIMA MINA ESQ
ALFRED FRAWLEY IV ESQ
MCCLOSKEY MINA & CUNIFF LLC
12 CITY CENTER
PORTLAND ME 04101