STATE OF MAINE      SUPERIOR COURT
CUMBERLAND, ss.     LOCATION: PORTLAND
            CIVIL ACTION
            DOCKET NO. CV-2020-0128


| | |
|---|---|
| PORTLAND LODGE ORDER NO. )<br>1310, LOYAL ORDER OF MOOSE, )<br>INC., )<br>         )<br>   PLAINTIFF, )<br>         )<br>         )<br>   v.      )<br>         )<br>RANDALL C. WILLIAMS & R.C. )<br>WILLIAMS COMPUTER SERVICES, )<br>         )<br>   DEFENDANTS, )<br>         ) | ORDER ON PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT |

Before the Court is Plaintiff's Motion for Summary Judgment filed pursuant to M.R. Civ. P. 56. For the following reasons, Plaintiff's Motion is DENIED in full.

## FACTUAL BACKGROUND

Plaintiff, Portland Lodge Order No. 1310, Loyal Order of Moose, Inc. ("Lodge"), is a social club located in Scarborough, Maine. (Pl.'s S.M.F. ¶ 2). The Plaintiff is a member of the Lodge of Moose International, Inc. which is known colloquially as the Loyal Order of Moose. (Pl.'s S.M.F. ¶ 1.) The Lodge operates as a social club providing a food and beverage service to its members. (Pl.'s S.M.F. ¶ 2.) All of the Lodge's food and beverage revenues are tracked through a point-of-sale system which operates on a cash only basis. (Pl.'s S.M.F. ¶ 2.)

Entered on the Docket: 9|17|21

REC'D CUMB CLERKS OFC
SEP 17 '21 AM8:16

1

From May 1st, 2013 until January 23rd, 2018, Defendant Randall C. Williams, acted as the Administrator of the Lodge.[1] (Pl.'s S.M.F. ¶¶ 4-5.) He received a small annual stipend for his role. (Pl.'s S.M.F. ¶ 7.) The Administrator of the Lodge is an officer-level position that reports to, and is a member of, the Lodge's Board of Officers. (Pl.'s S.M.F. ¶ 9.) The Administrator is primarily tasked with running the day to day operations of the Lodge. (Pl.'s S.M.F. ¶ 10.)

The Lodge submits that Mr. Williams' duties as the Lodge's Administrator were dictated by Moose International, Inc.'s general laws ("bylaws"). The bylaws instructed that Mr. Williams, as Administrator, was required to (a) keep accurate financial and administrative records for the lodge; (b) safeguard all funds received on behalf of the lodge and assure their proper deposit into the Lodge's bank accounts; (c) review and sign all authorized documents, receipts, certificates, communications, reports, and other papers; (d) draw and sign all checks for approved expenditures, and ensure that there are at least two original signatures on each of the Lodge's checks, one of which was his own and the other the Lodge's governor or treasurer; and (e) ensure that all Lodge funds were deposited into the Lodge's bank accounts on a weekly basis in the name of the Lodge and that corresponding deposit slips were transmitted to the treasurer. (Pl's S.M.F. ¶ 14.) Mr. Williams was also responsible for managing the flow of funds into and out of the Lodge's three different TD Bank accounts. (Pl.'s S.M.F. ¶ 20.)

Additionally, the Plaintiff has provided evidence that Mr. Williams in his capacity as Administrator was responsible for making sure that the Lodge was compliant with state and federal tax laws. (Pl.'s S.M.F. ¶¶ 24-25.) This included ensuring that the Lodge met all tax filing deadlines, filed all required documents to federal and state agencies, and paid sales tax on a monthly basis to the Maine Revenue Service ("MRS"). (Pl.'s S.M.F. ¶¶ 24-25.) The bylaws also

---

[1] Mr. Williams was "Acting Administrator" for the first five months of his tenure but then, on August 6th of 2013, officially became the Lodge's Administrator. (Pl.'s S.M.F. ¶¶ 4-5.)

2

required the Lodge's Administrator to ensure that the Lodge's insurance policies remained in effect and were timely renewed. (Pl.'s S.M.F. ¶ 26.)

In response, Mr. Williams does not dispute what the bylaws say in substance but does dispute whether the bylaws were followed in practice. (*See* Def.'s Resp. Pl.'s S.M.F. ¶¶ 12-14, 16-17, 23.) He infers that the terms of his employment were looser than the bylaw requirements.

Prior to Mr. Williams' resignation as Administrator in 2018, the Lodge contracted with a third party auditing firm to conduct an audit of the organization's finances during Mr. Williams' tenure as Administrator. (Pl.'s S.M.F. ¶¶ 37-41.) The audit included a review and analysis of the Lodge's QuickBooks files, its TD Bank account records, state and federal income tax filings, state sales tax filings, and vendor invoices or other expenses accounted for in the Lodge's files. (Pl.'s S.M.F. ¶ 39.)

Over the course of the five plus years that Mr. Williams served as Administrator of the Lodge, the audit uncovered a total of forty six checks made out to Mr. Williams individually and thirty seven made out to his business R.C. Williams Computer Services. (Pl.'s S.M.F. ¶¶ 42-69.) All tolled, the amount of money transmitted to Mr. Williams either individually or through his business was $114,978.59. (Pl.'s S.M.F. ¶ 69.)

The parties diverge primarily at whether these checks were authorized. The Lodge claims that the payments to Mr. Williams were unauthorized, making him liable to the Lodge for the torts of conversion and unjust enrichment. (Pl.'s S.M.F. ¶¶ 42-69.) Mr. Williams, on the other hand, contends that each check constitutes reimbursement either for purchases made out of Mr. Williams' personal funds on behalf of the lodge or for services rendered to the lodge by R.C. Williams Computer Services. (Pl.'s S.M.F. ¶¶ 42-69.)

3

The Lodge also discovered that during Mr. Williams tenure, sales tax revenue was incorrectly reported to the State on a number of occasions resulting in multiple penalties and assessments, and that necessary federal tax forms such as the Form-990 which allowed the Lodge to maintain their status as a 501(c)(3) corporation went unfiled. (Pl.'s S.M.F. ¶¶ 24-25.)

The Lodge, upon discovery of these payments and misfilings, attempted to file a claim with their commercial crime policy holder but discovered that the policy had lapsed. (Pl.'s S.M.F. ¶ 80.) They then issued a demand letter to Mr. Williams requesting that he return all money paid to him or his company and reimburse them for any tax assessments paid or associated costs. (Pl.'s S.M.F. ¶ 71.) Mr. Williams was unresponsive to the Lodge's demand. (Def.'s Resp. Pl. S.M.F. ¶ 71.)

The Lodge then filed the instant action in Cumberland County Superior Court on March 13th, 2020 seeking to recover the money they allege Mr. Williams wrongfully paid himself and the money paid in penalties to various tax authorities. The Plaintiff alleges four counts. The first count alleges the tort of conversion, the second claims that Mr. Williams breached his fiduciary duties to the Lodge, the third alleges that Mr. Williams was unjustly enriched by the payments from the Lodge to both him and his company, and the fourth and final count seeks indemnity from Mr. Williams for assessments paid by the Lodge to the MRS.

Concurrent with their complaint, the Plaintiff also filed a Motion for Attachment and Attachment on Trustee's Process pursuant to M.R. Civ. P. 4A & 4B, in the amount of $114,978.59, representing the total amount of the alleged improper payments to Mr. Williams and his business. (Pl.'s S.M.F. ¶ 73.) The motion was unopposed and in an order dated July 14, 2020 this court (Warren, J.) issued an order granting the attachment. (Pl.'s S.M.F. ¶ 75.) The court's order granted the Lodge an attachment against Mr. Williams' residence and the Lodge

4

then timely and properly filed the Order in the York County Registry of Deeds. (Pl.'s S.M.F. ¶ 76.)

On April 14th, 2021, the Plaintiff filed its Summary Judgment Motion seeking judgment on all four counts of its complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *3 W Partners v. Bridges*, 651 A.2d 387, 389 (Me. 1994). A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (internal quotations omitted).

When the plaintiff is the moving party on a motion for summary judgment, the plaintiff has the burden to prove that each element of its claim is established without dispute as to the material facts within the summary judgment record. *North Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278.

## DISCUSSION

In the instant case, the Plaintiff has moved this court for Summary Judgment on each count of their complaint. Each count is addressed in turn below.

5

## I. Conversion

Plaintiff first seeks judgment on count one which alleges that Mr. Williams engaged in the tort of conversion when, as the Administrator of the Lodge, he issued himself and his business checks over a five and a half year period, ultimately transmitting $114,978.59 of Lodge funds to both.

To establish a claim for the tort of conversion the Plaintiff must show (1) they had an interest in the converted property; (2) that they had the right to possess the property at the time of the alleged conversion; and (3) they made a demand for return of their money that was denied by the holder. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. To establish a prima facie case, the party alleging conversion *must demonstrate* a property interest in and the right to possession of the property. *Id.* at ¶ 8 (emphasis added).

In the instant case, two of the three elements for the tort of conversion are uncontroverted by the summary judgment record. There is no dispute that the Lodge had an interest in the money that was transmitted to Mr. Williams and his business. It is also undisputed that the Lodge presented Mr. Williams with a demand for a return of the money and that demand was denied. What remains unclear is whether the Lodge had the right to possess the money transmitted to the Defendants at the time of the transmission.

The record is replete with adamant assertions by Mr. Williams that any check he received from the Lodge was reimbursement for personal funds used to purchase items on behalf of the lodge and services rendered by his business to the lodge. In his various pleadings and in his deposition testimony, Mr. Williams remains steadfast that any amount paid to him by the lodge was in the nature of reimbursement.[2]

---

[2] On December 14, 2020, this court (J. Warren), issued an order requiring Mr. Williams to deliver any evidence of proper purposes for the distribution of funds to the Plaintiff by January 28th, 2021. (Pl.'s S.M.F. ¶ 78.) To date, Mr.

6

The record before this court generates a genuine issue of material fact as to whether the Plaintiff had a right to possess the property at the time of conversion. Accordingly, Summary Judgment on count one is denied.

## II. Breach of Fiduciary Duty

Second, Plaintiff seeks summary judgment on its claim that Mr. Williams breached his fiduciary duties to the Lodge when he was the Lodge's Administrator.

### A. Existence of Fiduciary Relationship

The court first considers whether a fiduciary relationship existed between Mr. Williams and the Lodge. To do so, the court looks to the Maine Nonprofit Corporation Act ("MNCA"). The court notes prior to its analysis here that the record does not clearly establish that the Lodge is a nonprofit corporation registered in the State of Maine. Although the Plaintiff makes a cursory mention of the organization's nonprofit status in its statement of material facts, it offers no separate fact supporting this proposition. Despite this, the court chooses to judicially notice the Lodge's existence as a nonprofit corporation in good standing and currently on file with the Maine Office of the Secretary of State. *See Royatex, Ltd. v. Daughan*, 551 A.2d 454, 455 (Me. 1988) (a court may take "judicial notice of adjudicative facts" when those facts "are not subject to reasonable dispute"). *See also* M.R. Evid. 201(b)(2) (a fact may be judicially noticed if it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

---

Williams has remained unresponsive to this request but contends it is because he does not have possession of the Lodge's check ledger which is in the possession of the Lodge. (Def.'s Resp. Pl.'s S.M.F. ¶ 79.) The Lodge responds that nobody employed there is in possession of the Ledger. (Pl.'s Resp. Def.'s Resp. Pl.'s S.M.F. ¶ 78.) The Lodge asserts that this failure to produce evidence responsive to the Court's order should support summary judgment in their favor. (Pl.'s Resp. Def.'s Resp. Pl.'s Mot. S.J. 2.) The failure of the Defendant to produce documents that support his assertions may undercut the weight of his assertions at trial but do not affect the instant summary judgment analysis. Mr. Williams' deposition testimony alone is enough to raise a genuine issue of fact as to whether the payments made to him were authorized. Credibility is left to the fact finder.

Each officer of a nonprofit corporation "is authorized to and shall perform the duties set forth in the bylaws." 13-B M.R.S. § 719. Here, the record establishes without any dispute as to material fact that Mr. Williams, as the Administrator, was an officer of the Lodge. He was titled as an officer, appointed by the Board of Officers and was a member of that same board. Thus, the MNCA required him to carry out his duties pursuant to the Lodge's bylaws.

*B. Breach of Fiduciary Duty*

Next, the court must determine whether Mr. Williams breached his duties to the Lodge. The Lodge contends that Mr. Williams breached his fiduciary duties because he: (1) stole money from the Plaintiff; (2) failed to timely and accurately file sales tax reports with MRS resulting in penalties, assessments and interest being charged to the Lodge; (3) failed to file Internal Revenue Service ("IRS") Form-990's each year that he was Administrator resulting in a loss of the organization's 501(c)(3) nonprofit status and other penalties; and (4) allowed the Plaintiff's commercial crime policy to expire in June of 2016, leaving the lodge without recourse from its insurance carrier to remedy the instant harm.

Any officer of a nonprofit corporation with discretionary authority shall discharge the officer's duty under that authority: (A) in good faith; (B) with the care an ordinarily prudent person in a like position would exercise under the circumstances; or (C) in a manner the officer reasonably believes to be in the best interests of the corporation and its members. *Id.* § 720(1). Whether an officer who stands in a fiduciary relationship with his corporation is guilty of breach of his duties in a particular case is largely a matter of fact dependent upon the circumstances of each case. *Atl. Acoustical & Insulation Co. v. Moreira*, 348 A.2d 263, 267 (Me. 1975).

First, the Lodge alleges that Mr. Williams breached his duty to safeguard the Lodge's funds by stealing money from the Lodge. For the same reason as the Plaintiff's claim for conversion

8

above, they cannot succeed in seeking summary judgment on this claim. There is a genuine issue of material fact as to whether the payments to Mr. Williams were authorized. If his testimony was believed, a factfinder could find that his reimbursement did not breach his fiduciary duty.

Second, the Lodge alleges Mr. Williams violated his tax reporting obligations when he failed to accurately and timely submit the Lodge's sales tax revenues to the MRS, resulting in assessments and interest charges in the amount of $3,393.51. Whether a breach of fiduciary duty occurred is a particularly fact intensive inquiry, and on the record before this court, there are genuinely disputed issues as to this alleged breach which are better suited for a fact finder's decision on the merits. Although the Lodge claims that Mr. Williams did not timely or accurately pay or report taxes on multiple occasions, Mr. Williams refutes this allegation. In his deposition testimony, he argues that while there "may have been late filings", he doesn't "believe [he] would've underreported anything." (Williams Dep. 63.) Even if Mr. Williams words are construed as admitting to being the cause of some liability to MRS, the record does not establish without dispute, that he was not acting in good faith, as a reasonable person would, or in the best interests of his organization. Accordingly, because the Plaintiff has not met its burden on this alleged breach, summary judgment is denied.

Third, the Plaintiff alleges that Mr. Williams also violated his duty of ensuring compliance with all tax obligations when he failed to file the IRS-Form 990 each of the five years that he was Administrator, causing the Lodge to lose its status as a 501(c)(3) corporation. The record here presents no issue of material fact as to whether these forms were filed. They were not, and as such, the Lodge did lose its 501(c)(3) status. However, in Mr. Williams' filings and in his deposition testimony, he alleges that one year, he delegated this duty to another Lodge member and asked an accounting firm to file these documents the other four. (*See* Williams Dep. 55.) This evidence

9

produced by Mr. Williams is sufficient to raise a genuine issue of fact as to whether he breached this duty. If he did in fact delegate these tasks, it is possible that he acted in good faith, as a reasonable and prudent person would, or in what he believed to be in the best interests of the Lodge.

Lastly, the Lodge contends that Mr. Williams violated his fiduciary duties because he failed to maintain the Lodge's insurance policies—including the commercial crime policy that would have allowed the Lodge to recover for the alleged harm here. The record demonstrates that Mr. Williams thought his annual payments to the international chapter of the Lodge was all that was needed to maintain all active policies. (Williams Dep. 65-66.) This evidence is enough to survive summary judgment because if this belief was sincere, a fact finder may find Mr. Williams was acting in good faith.

*C. Conclusion*

The MNCA establishes Mr. Williams was a fiduciary acting on behalf of the Lodge and owed them a duty to act in accordance with his responsibilities under the bylaws. Whether he breached that duty is a factual question. The threshold for a defendant to generate a sufficient issue of material fact to avoid summary judgment is low. Here, Mr. Williams generated sufficient genuine issues of material fact to clear that threshold. Summary judgment on Count II is denied.

## III. Unjust Enrichment

Third, the Plaintiffs seek Summary Judgment on count three of their complaint which alleges that Mr. Williams was unjustly enriched by the money he and his business received.

To prevail on a claim for unjust enrichment, the complaining party must show that (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make

10

it inequitable for it to retain the benefit without payment of its value." *Maine Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707. The doctrine of unjust enrichment allows "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.

The summary judgment record generates no genuine issue of material fact as to whether the Lodge conferred a benefit on Mr. Williams or whether Mr. Williams had appreciation or knowledge of the benefit. It is the third and final element of the tort which presents a challenge for the Plaintiff to succeed in summary judgment.

As was made clear in the discussion of Plaintiff's first count alleging conversion, the record generates a genuine factual issue as to whether the payments to both Defendants were improper, unauthorized payments, or whether they were payments made for the purposes of reimbursing the Defendants for costs accrued on behalf of, or in service to, the Lodge. If the payments were for proper, reimbursement purposes, then the acceptance or retention of the benefit by Mr. Williams both individually and as a business owner would not be inequitable. If he was entitled to receive those funds, then the Plaintiff's claim for unjust enrichment fails.

The record again, viewed in the light most favorable to the Defendant, generates a genuine dispute of material fact as to whether Mr. Williams or his business, was entitled to receive the payments in question. Accordingly, Plaintiff's Motion for Summary Judgment as to count three is denied.

## IV. Indemnification

11

Fourth and finally, the Plaintiff seeks summary judgment on count four of its complaint which alleges that the Lodge is entitled to indemnification from Mr. Williams for its financial liability to the IRS, MRS, or any other third party resulting from Mr. Williams' alleged conduct as the Administrator.

Generally, indemnification claims arise in the tort context of joint liability. The general rule is that "a joint tortfeasor's right to indemnity can arise in three circumstances: (1) when it is agreed to expressly; (2) when a contractual right of indemnification may be implied between the two parties; or (3) where a tort-based right to indemnity may be found where there is a great disparity in the fault of the parties. *Emery v. Hussey Seating Co.*, 1997 ME 162, ¶ 10, 697 A.2d 1284.

At the outset, the court notes that nothing in the record establishes that the Lodge and Mr. Williams are joint tortfeasors. Any financial liability that the Lodge has to third parties, to the extent that it has been established in the record, is statutory in nature.[3] The Plaintiff has not provided any authority establishing a right to indemnity when the parties are not joint tortfeasors or a right to indemnity applicable to the relationship of these parties. If there is a cause of action for indemnity, the questions of fact generated in the other counts would also apply here. Therefore, summary judgment on Count IV is denied.

## CONCLUSION

For the reasons stated herein, the **Entry is:**

Plaintiff's Motion for Summary Judgment is DENIED

---

[3] The Plaintiff has established in the record that it paid approximately $3,393.51 to MRS for the underreporting of sales tax owed. (Pl.'s Mot. S.J. 6.) The MRS derives its enforcement power from statute, meaning that any liability owed to them is not tortious in nature. 36 M.R.S. § 141.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: September 16th, 2021

Thomas McKeon,
Justice, Superior Court